STARK, Appellant, et al.

v.

LEONARD FUCHS IRREVOCABLE GIFT TRUST et al., Appellees.

[Cite as *Stark v. Leonard Fuchs Irrevocable Gift Trust* (2001), 145 Ohio App.3d 699.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78643.

Decided Aug. 20, 2001.

*Grendell & Simon Co., Timothy J. Grendell* and *Brian M. McDonough,* for appellant.

*Fred N. Carmen* and *Morry Weiss,* for appellees.

---

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant Robert L. Stark ("Stark") appeals from the trial court's granting summary judgment in favor of defendants-appellees-movants Leonard Fuchs Irrevocable Gift Trust ("Fuchs") and Renprop, LLC ("Renprop") on count one of their counterclaim. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that Stark, 540 Investment Company Limited Partnership ("540 L.P."), Renprop, and Fuchs are members in Renaissance Properties, LLC ("Renaissance"), an Ohio limited liability company organized on May 13, 1998, pursuant to an operating agreement. These same four entities, Stark, 540 L.P., Renprop, and Fuchs, are also members in another Ohio limited liability company, GAMCO Properties, LLC ("GAMCO"), which was organized pursuant to an operating agreement substantially similar to the Renaissance operating agreement.[1] Renaissance and GAMCO are the owners and operators of a retail shopping center known as The Shops of Willoughby Hills ("shopping center"), commonly known as Loehman's Plaza. Interests in the Renaissance and GAMCO LLCs are owned in the following percentages: (1) Stark owns a twenty-percent interest; (2) 540 L.P. owns a twenty-percent interest; (3) Renprop owns a twenty-percent interest; and, (4) Fuchs owns a forty-percent interest.

Under the operating agreements in question, at Article 3.1(a), Stark was appointed the Manager of the Renaissance and GAMCO LLCs.[2] The Manager is an officer of the company. See operating agreement at Article 3.2(a). Removal of any agent of the LLCs, which would include the position of Manager, was provided under Article 3.2(c) of the operating agreements.[3] Conceded by the

---

1. The Renaissance and GAMCO operating agreements were drafted and prepared by Stark's legal counsel.

2. Article 3.1(a) provides:
   "(a) The Members hereby appoint Stark as the 'Manager' to represent the Members and the Company until his successor shall be duly elected; to be vested with the management, administration and operation of Company business and affairs * * *."

3. Article 3.2(c) provides:
   "(c) Any officer or agent may be removed by the Members whenever in their judgment the best interests of the Company would be served thereby, but such removal shall be without prejudice to the contractual rights, if any, of the person so removed."

parties, the operating agreements are silent with respect to the procedure to be employed in effecting the removal of the Manager.

By correspondence dated July 10, 1998, Renprop and Fuchs, who represent sixty percent of the majority control of the Renaissance and GAMCO LLCs, notified Stark and 540 L.P. that the parties would meet on July 17, 1998, with the intention to remove Stark as Manager and elect a new Manager.

On July 17, 1998, Stark filed a complaint against Fuchs and Renprop alleging various tortious and contractual claims for relief, including injunctive and declaratory relief. In essence, Stark sought to stave off his removal as Manager and provide a declaration that rather than requiring a simple majority of the parties to remove an officer, all of the parties to the operating agreements were required to agree on such an action. Fuchs/Renprop filed an answer and counterclaim against Stark and new-party plaintiff/counterclaim defendant 540 L.P.

Subsequent to further pleading, Fuchs and Renprop, on May 6, 1999, filed their motion for partial summary judgment on count one of their counterclaim, which count sought a declaratory judgment authorizing Fuchs and Renprop, as owners of a sixty-percent interest in the Renaissance and GAMCO LLCs, to remove Stark as Manager by virtue of their majority control. This motion was opposed by Stark on June 7, 1999, and by 540 L.P. on July 23, 1999.

On November 5, 1999, the trial court granted the Fuchs/Renprop motion for partial summary judgment, concluding that the operating agreements in issue permit the removal of an officer by simple majority vote of the Renaissance and GAMCO LLC members. This order provides:

"Viewing the May 13, 1998 Operating Agreement (Agreement) most favorably to Plaintiff, reasonable minds can only conclude that the procedure for removal of an officer is by majority vote of the LLC Members. The following reflect that the intent of the Members was to allow for removal of the Manager by majority vote:

"1. Article XI of the Agreement states that if any matter is not adequately covered by the Agreement, the doctrine of cy pres ('as near as possible') shall be applied in order to carry out the purpose and intent of the Agreement. Sec. 1.4 states the purpose of the company is carrying on the business of the Partnership in the same manner as it was carried on by the Partnership prior to its liquidation into an LLC, and to do all things incidental thereto. These two provisions read together mean that the purpose of the LLC is to run the real estate properties. The LLC cannot run effectively without a Manager. There would be a stalemate if the removal of the Manager required a unanimous vote since one of the Members is the Manager.

"2. The Agreement specifically states when unanimous consent is required, as in Section 1.4(a) (purchasing additional land) and 4.1 (selling or mortgaging land).

"3. Section 3.1 states that the Manager shall be appointed until his successor shall by [sic] duly elected by the members.

"4. Section 3.2(b) states the Officers, including the Manager, shall by [sic] elected by the Members and hold office until the successor shall by [sic] duly elected.

"Furthermore, ambiguity in a contract is construed against the drafter, Plaintiff Starks. Finally, in the law of partnerships and corporations, majority rule is the norm. O.R.C. § 1705.01 *et seq.* regarding LLC provides specifically when a unanimous vote is required. Removal of a manager is not covered in those sections. See § 1705.25, § 1709.09 and § 1705.14(B)(1).

"This ruling also resolves Count One of Plaintiff's Complaint (declaratory judgment). This Court holds that Plaintiff Stark will remain as Manager of Renaissance Properties LLC until formal action is taken by a majority vote of the Members to remove him. The remaining Counts of Plaintiff's Complaint (tortious [sic] interference and breach of fiduciary duty) and Defendant's Count Two (breach of fiduciary duty) are referred to Court-sponsored business mediation."

Subsequent to this order, the remaining claims and counterclaims were mediated, then settled and dismissed without prejudice by the parties on September 8, 2000. Stark appeals from the November 5, 1999 ruling on the motion for partial summary judgment.

Stark presents three assignments of error for review. These assignments will be discussed jointly, since each assignment argues contract construction and the intent of the parties relative to the propriety of granting summary judgment on count one of the counterclaim. The assignments provide:

"I

"The trial court erred as a matter of law in granting summary judgment to appellees Leonard Fuchs Irrevocable Gift Trust and Renprop, LLC on count one of their counterclaim because under Ohio contract law an operating agreement is a contract and the assent of all of the members to that agreement are required to modify the terms thereof, without an express contractual provision to the contrary.

"II

"The trial court erred as a matter of law in granting summary judgment to appellees Leonard Fuchs Irrevocable Gift Trust and Renprop, LLC on count one

of their counterclaim because under O.R.C. Chapter 1705, Renaissance and GAMCO are manager managed (*not* member managed) limited liability companies, and, as such, Stark *cannot* be removed as manager by a simple majority vote of the members, unless the operating agreements specifically provide for such a simple majority vote. [Emphasis *sic.*]

"III

"The trial court erred as a matter of law in granting summary judgment to appellees Leonard Fuchs Irrevocable Gift Trust and Renprop, LLC on count one of their counterclaim because the intent of the parties with respect to the manager removal requirement was a genuine issue of fact in dispute in this case, which precluded summary judgment."

The standard of appellate review for a summary judgment ruling was stated by this court, as follows:

"This court reviews the lower court's grant of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. We apply the same test as a trial court which test is set forth in Civ.R. 56(C) and specifically provides that before summary judgment may be granted it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United Inc.* (1977), 50 Ohio St.2d 317, 327 [4 O.O.3d 466, 471–472], 364 N.E.2d 267.

"Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548 [2556], 91 L.Ed.2d 265 [278]; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138 [139–141]. In accordance with Civ.R. 56(E), 'a nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing there is a genuine issue for trial.' *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 629 N.E.2d 513. The nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Dresher, supra; Celotex, supra* at 322 [106 S.Ct. at 2552, 91 L.Ed.2d at 273]." *Geraci v. Conte* (Nov. 22, 2000), Cuyahoga App. No. 77420, unreported, 2000 WL 1739294, at * 2.

█ Moreover, with regard to contract construction, we note:

"Construction of contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241 [7 O.O.3d 403], 374 N.E.2d 146. Where the terms of a contract are clear and unambiguous, summary judgment proceedings are appropriate. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321 [15 OBR 448], 474 N.E.2d 271. Courts must give the contract reasonable construction in conformity with the parties' intent which intent is to be determined by the words of the contract. *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336 [10 O.O.2d 424], 164 N.E.2d 745." *Id.* at * 3.

■ Also, it must be emphasized that where a contract's terms are clear and unambiguous, the trial court cannot, "in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Brandon/Wiant Co. v. Teamor* (1998), 125 Ohio App.3d 442, 447, 708 N.E.2d 1024, 1028.

In the present action, the operating agreements, at Article 3.1(a), clearly refer to the potential for a replacement election of the Manager where it is provided that Stark shall hold the office of Manager until his successor is duly elected. Article 3.2(a) identifies the officers of the companies, which includes the position of Manager, and Article 3.2(b) mandates that all officers of the companies be elected by the members and that the officer shall hold office until the officer's successor is duly elected or "until his earlier death, resignation *or removal.*" (Emphasis added.) Article 3.2(c) also explicitly contemplates removal of officers by the members, stating, "Any officer or agent may be removed by the Members whenever in their judgment the best interests of the Company would be served thereby * * *." Finally, Section 3.2(d) provides that vacancies in an office caused by, in part, removal, may be filled by the members for the unexpired term of that office. These sections contemplate, to any reasonable observer, that the LLC members intended that officers must be elected and that officers were subject to removal by the members. To conclude otherwise would render the language employed by the parties to be useless, which would be counterproductive to the plain language employed in the operating agreements.

■ Faced with this unambiguous language authorizing election and removal of officers, the central issue is what was the intent of the parties with regard to the voting procedure to be employed when removing an officer of the company: Was it intended that the parties unanimously agree to removal of officers, which is the view of Stark, or was it the intent of the parties that a simple majority vote of the members be controlling, as advanced by the appellees herein? In answering this question, and noting that any ambiguities in the agreements must be construed against the drafter (to wit, Stark), the trial court looked to Article XI of the operating agreements for guidance. Article XI, which unambiguously

provides for the application of the cy-pres rule[4] so as to give effect to the purposes and intent of the operating agreements (to wit, the orderly operation of the business of the companies and all things incidental thereto), states:

"ARTICLE XI—INTERPRETATION

"The invalidity or unenforceability of any provision of this Agreement shall not effect or impair any other provisions. *If any part or parts of this Agreement cannot be given effect or if any matter is not adequately covered herein, the cy pres doctrine shall be applied* and every effort shall be made to enable the purposes and intent of this Agreement to be carried out and effectuated." (Italics added, underline *sic*.)

Applying the cy-pres rule of construction, as the court was required to do by the clear terms of Article XI, which expressed the intent of the parties to give effect to areas not adequately covered by the operating agreements, the trial court correctly noted that were a unanimous agreement of the members be required to remove the Manager (or effect any vote on an officer's status, for that matter), the Manager in this case, a minority interest holder, could block his removal by voting against the actions of his fellow members, thereby making it impossible to give effect to the provisions of the operating agreements permitting election, replacement, or removal of an officer. This situation would be untenable and frustrate the continued and orderly operation of the companies within the framework of the operating agreements, effectively turning the LLCs into the personal fiefdom of a Manager who would be unaccountable to the members of the LLCs as long as that Manager disagreed with any of the remaining members of the LLCs. The only reasonable voting method that could accomplish and give effect to the previously mentioned Articles contained within the operating agreements is to permit a simple majority vote of the members to control LLC elections or removals.

Accordingly, the assignments of error are overruled.

*Judgment affirmed.*

FRANK D. CELEBREZZE, JR., and GREY, JJ., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

---

4.  Black's Law Dictionary (6 Ed.1990) 387, defines the "cy-pres rule" as follows:

"As near as (possible). The rule of *cy-pres* is a rule for the construction of instruments in equity, by which the intention of the party is carried out *as near as may be,* when it would be impossible or illegal to give it literal effect. * * *" (Emphasis *sic*.)