OPINION
{¶ 1} This case involves the appeal of Louise Eros Epperson and Holdeman-Eros, LLC (Epperson and the Company, respectively), from a trial court decision granting summary judgment in favor of Jo Ann Holdeman, executor of the Estate of Daniel W. Holdeman. The trial court's decision allowed the executor to participate in the Company, even though Epperson had not agreed to let the executor become a member.
 {¶ 2} On May 3, 2003, Epperson and Daniel Holdeman formed the Company by entering into an operating agreement, and by filing articles of organization for a limited liability company with the Ohio Secretary of State. At that time, Mr. Holdeman was a member and director, and owned a 51% interest in the Company. Epperson was also a member and director, and owned a 49% interest.
 {¶ 3} Within a matter of months after the Company was formed, Daniel Holdeman died testate, and his surviving spouse, Jo Ann Holdeman, was appointed executor of the estate. Before his death in November, 2003, Mr. Holdeman had failed to designate a successor in interest to his membership in the Company. After being appointed executor, Mrs. Holdeman asked to be recognized as a member of the Company, but consent was refused. Mrs. Holdeman then filed a declaratory judgment action against Epperson and the Company, requesting a declaration that she should be accorded all the rights of a member during the period of administration.
 {¶ 4} Epperson and the Company filed an answer and counterclaim, seeking a declaration that Mr. Holdeman ceased to be a member of the Company upon his death, and that Mrs. Holdeman was not a member of the Company.
 {¶ 5} After considering cross motions for summary judgment, the trial court found that Mrs. Holdeman, as executor, should be accorded all rights as a member of the Company, including, but not limited to full rights to profits and distributions, full access to all business records, and full rights of operation and control. The court also dismissed a part of the complaint that dealt with an attempted exercise of an option to purchase Holdeman's interest in the Company. Because the parties appeared to be confused about whether the option to purchase had been exercised, the court dismissed that part of the complaint without prejudice. Holdeman did not appeal from the order, and no issues about the dismissal have been raised on appeal.
 {¶ 6} In support of the appeal, Epperson and the Company claim in a single assignment of error that:
 {¶ 7} "The trial court erred by sustaining the Plaintiff's motion for summary judgment and overruling Defendants' motion for summary judgment and ruling as a matter of law that the executor of the estate of a deceased member of a limited liability company assumes the status as a member, with all rights and privileges under Ohio law."
 {¶ 8} After considering the applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 9} The operating agreement in this case provides that the Company shall be a member-managed limited liability company, and that all Company authority shall be exercised by a board of directors consisting of all members of the Company. As the member who owned the largest percentage interest in the Company, Daniel Holdeman was the managing member and would have presided at the meetings of the board of directors. See Section 7.3 of the operating agreement.
 {¶ 10} Section 10 of the operating agreement contains restrictions on transfer of a member's interest. In particular, Section 10.1 states that "[e]xcept as specifically provided otherwise in this Operating Agreement, no Member shall assign or otherwise transfer all or any part of any interest in the Company, or with draw from the Company, without the consent of a Majority-in-Interest (other than the Member attempting to transfer the interest)." In the event that a member chose to assign his interest, the assignee could be admitted as a member of the Company only after complying with certain conditions, which included that "[t]he Company shall consent in writing to the admission of the assignee as Member, which consent may be withheld for any reason." Section 10.1 (b).
 {¶ 11} Regarding death of members, the operating agreement states that:
 {¶ 12} "the `Successor in Interest' of the deceased Member, as defined in Section 12, shall immediately succeed to the interest of such Member in the Company. Such Successor-in-Interest shall not become a Member of the Company unless admitted as a Member in accordance with Section 10 of this Agreement."
 {¶ 13} Under Section 12, a successor in interest is defined as:
 {¶ 14} "such person as the Member shall, from time to time, have designated in a notice to the Company by completing and delivering to the Company a form similar to Exhibit B, attached hereto. In the event that a Member has failed to designate a Successor in Interest, or if the person designated is not then living or for any reason renounces, disclaims or is unable to succeed to such interest, the Successor in Interest shall be the executor or administrator of the deceased Member's estate, who shall hold or distribute such interest in accordance with applicable fiduciary law."
 {¶ 15} Section 12 also provides that a successor in interest may be admitted only as provided in Section 10. In other words, a successor in interest must have written consent of the Company to be admitted as a member.
 {¶ 16} Because Daniel Holdeman did not designate a successor in interest before his death, the executor of his estate (in this case, his wife, Jo Ann), became his successor in interest. However, under the terms of the operating agreement, Mrs. Holdeman could not become a member of the Company unless the Company consented. Because consent was refused, Jo Ann Holdeman, as executor, would have had a membership interest in the company, but would not be a member.
 {¶ 17} Normally, this would resolve the case, as "`[c]ourts must give the contract reasonable construction in conformity with the parties' intent, which intent is to be determined by the words of the contract.'"Stark v. Leonard Fuchs Irrevocable Gift Trust (2001),145 Ohio App.3d 699, 704, 764 N.E.2d 446 (citation omitted). In addition, "where a contract's terms are clear and unambiguous, the trial court cannot, `in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.'" Id.
 {¶ 18} The trial court was aware of these points, but found that the Ohio General Assembly had preempted the founding members of limited liability companies from deciding what should happen upon a member's death. In this regard, the court focused on R.C. 1705.21(A), which states that:
 {¶ 19} "[i]f a member who is an individual dies or is adjudged an incompetent, his executor, administrator, guardian, or other legal representative may exercise all of his rights as a member for the purpose of settling his estate or administering his property, including any authority that he had to give an assignee the right to become a member."
 {¶ 20} The trial court stressed that when the General Assembly enacted laws governing limited liability companies, it distinguished between the terms "membership interest" and "rights as a member." As an example, the court cited R.C. 1705.01(G), which defines a member as a "person whose name appears on the records of a limited liability company as the owner of a membership interest." In contrast, R.C. 1705.01(H) states that a "membership interest" is simply "the Member's share of the profits and losses of a limited liability company and the right to receive distribution from that company."
 {¶ 21} The court further noted that the General Assembly has classified members as having rights that extend beyond receipt of profits and distributions. For example, R.C. 1705.22 gives each member:
 {¶ 22} "the right to obtain from the limited liability company all of the following from time to time and upon reasonable demand for any purpose reasonably related to its membership interest in the company:
 {¶ 23} "(a) True and full information regarding the status of the business and the financial condition of the company * * *."
 {¶ 24} In the same vein, R.C. 1705.18 indicates that assignment of a "membership interest" does not entitle the assignee to become or to exercise any rights of a member. Instead, the assignment entitles the assignee to receive allocations of profits, losses, and similar items to which the assignor would have been entitled. Based on these distinctions, the trial court concluded that to the extent the operating agreement sought to limit the executor's rights as a successor in interest, it contravened the statues of Ohio and was of no legal effect.
 {¶ 25} The Ohio Supreme Court has said that "[i]t is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are part of every contract." Bell v.Northern Ohio Tel. Co. (1948), 149 Ohio St. 157, 158, 78 N.E.2d 42. Accord, Milo v. The Milo Co. (June 17, 1992), Summit App. No. 15251, 1992 WL 139991, *3 (holding that R.C. 1702.35(B), which prohibits corporations from repurchasing their own stock if they are insolvent, is read into a stock repurchase agreement). See, also, Tamarkin v. Children of Israel,Inc. (1965), 2 Ohio App.2d 60, 68-69, 206 N.E.2d 412 (holding that a private contract may not modify existing state statute by preventing parties from removing bodies buried in a cemetery, when the state statute allows disinterment).
 {¶ 26} Our own district has stressed that "when the terms of a contract conflict with a statute, the statute will prevail." Karras v.Nationwide Life Ins. Co. (1989), 65 Ohio App.3d 17, 21,582 N.E.2d 1010. R.C. 1705.04(A) echoes this theme by providing that articles of organization for a limited liability company shall set forth the name of the company, the period of duration, and "[a]ny other provisions that are from the operating agreement or that are notinconsistent with applicable law * * *." (Emphasis added.) Consequently, provisions in the Ohio Revised Code are read into limited liability company operating agreements, and if inconsistencies exist, the statutes will control.
 {¶ 27} Epperson contends, however, that the trial court incorrectly interpreted R.C. 1705.21(A). According to Epperson, the plain meaning of the statute is that executors may exercise only the rights a member retains after death. Therefore, since Mr. Holdeman failed to retain his member rights after death, an executor would have nothing to exercise. Epperson also claims that the trial court ignored the effect of R.C.1705.15, which provides that "[e]xcept as approved by the specific written consent of all members at the time, a person ceases to be a member of a limited liability company upon the occurrence of * * * the following events of withdrawal." Among the events of withdrawal are such things as a member's resignation or removal in accordance with the operating agreement, and a member's adjudication as a bankrupt or insolvent. R.C. 1705.15(A), (B), and (C)(3). As pertinent to this case, another event of withdrawal is that "unless otherwise provided in the operating agreement, a member dies or is adjudicated an incompetent." R.C. 1705.15(E).
 {¶ 28} Based on the operating agreement and the applicable law, Mr. Holdeman ceased to be a member of the Company at the time of his death. His executor could have become a member of the Company in one of two situations; (1) if the operating agreement provided for membership after death; or (2) if all members consented. Because neither event occurred, the executor admittedly did not become a member of the Company. However, this does not answer the question of what rights the executor possessed. Unlike Epperson, we do not believe that R.C. 1705.21(A) plainly restricts the executor's rights. In the first place, R.C. 1705.21(A) does not contain any language limiting an executor's exercise of rights to those a member has after death. Instead, the statute implies that the rights include those that members possess before death.
 {¶ 29} Notably, R.C. 1705.21(A) refers to member rights in the past tense. In this regard, the statute specifically says that an executor may exercise all the decedent's rights as a member, "including any authority he [the decedent] had to give an assignee the right to become a member." (Emphasis and parenthetical material added). If the legislature intended to restrict executors to member rights that a decedent possesses after death, the legislature would have used the present tense. In such a situation, the legislature would have said that executors may exercise a decedent's rights, including the authority the decedent "has" to give assignees the right to become members. However, this is not the language the legislature used.
 {¶ 30} Admittedly, the statute could have been phrased more clearly. In enacting R.C. 1705.15 and R.C. 1705.21, the General Assembly did not say why it included provisions terminating a member's interest upon death or giving executors the ability to assert a member's rights. One could argue that the statute was simply intended to clarify that an executor is entitled to exercise the rights of a member, in situations where the operating agreement may not have addressed the point. However, because the matter is not free of ambiguity, we will consider what the legislature's purpose might have been when it enacted these statutes.
 {¶ 31} In the case of In re ICLNDS Notes Acquisition, LLC (Bkrtcy. N.D. Ohio 2001), 259 B.R. 289, the Bankruptcy Court for the Northern District of Ohio noted that:
 {¶ 32} "[a] limited liability company (`LLC') is a relatively new form of doing business that is created and defined by state law. The first such law was enacted in Wyoming in 1977, with the majority of states having followed suit by 1996. * * *
 {¶ 33} "Under Ohio law, as elsewhere, an LLC is neither a corporation nor a partnership, as those concepts are commonly understood. Instead, an LLC is a hybrid in that it: is a form of legal entity that has attributes of both a corporation and a partnership but is not formally characterized as either one. Generally, an LLC offers all of its members, including any member-manager, limited liability as if they were shareholders of a corporation but treats the entity and its members as a partnership for tax purposes." Id. at 292-93.
 {¶ 34} After making these points, the bankruptcy court decided that because an LLC had some attributes of a corporation and also had some partnership attributes, the logical approach would be to use rules typically applied to these entities. Id. at 294. We agree, and find this an appropriate method for analyzing the issues before us. Accordingly, we will review how partnerships and corporations are treated for estate purposes, in order to decide what the General Assembly may have intended in enacting R.C. 1705.15 and R.C. 1705.21. We will also look at how limited liability corporations are treated in other jurisdictions.
 {¶ 35} Under the law of partnerships, property brought into a partnership or subsequently acquired with partnership funds, is partnership property. R.C. 1775.07. Rights in specific partnership property vest in the surviving partners, subject to settlement with the estate of the deceased partner. A legal representative of a deceased partner is also authorized to obtain an accounting upon dissolution of the partnership, which takes place at that partner's death. Simandl v.Schimandle (1982), 3 Ohio App.3d 357, 361, 445 N.E.2d 734, citing R.C. 1775.24 and 1775.42. Therefore, an executor has an interest in partnership property and the right to an accounting, but does not hold personal property. A deceased's partner's representative also has a common law right to petition for a partnership accounting. Nahas v. George
(1950), 153 Ohio St. 574, 579, 93 N.E.2d 5.
 {¶ 36} In contrast, shares in a corporation are personal property, and "title to personal property of a deceased person passes to his personal representative, his executor, or administrator, pending the settlement of the estate, whether he dies testate or intestate." Lehtinen v. Drs.Lehtinen, Mervart West, Inc., 99 Ohio St.3d 69, 2003-Ohio-2574,788 N.E.2d 1079, at ¶ 20, citing R.C. 1701.24 and Winters Nat. Bank Trust Co. v. Riffe, 2 Ohio St.2d 72, 206 N.E.2d 212. In this situation, "`an executor's title to stock in an estate is acquired by operation of law.'" Id.
 {¶ 37} Like shares in corporations, "membership interest in a limited liability company is personal property." R.C. 1705.17. Accordingly, in this context, a limited liability company is more like a corporation than a partnership.
 {¶ 38} Furthermore, unlike partners in partnerships, members of limited liability companies do not have common-law rights to an accounting. Any such rights must be granted either by statute or in the agreement the parties make. Landskroner v. Landskroner,154 Ohio App.3d 471, 483-484, 2003-Ohio-4945, 797 N.E.2d 1002, at ¶ s10 and 25 (holding that an individual who is no longer a member of a limited liability company is not entitled to seek an accounting for violation of statutes governing allocation and distribution of profits of limited liability companies, nor may the non-member bring an action for judicial dissolution under R.C. 1705.47).
 {¶ 39} Because the ability to bring actions for an accounting is limited to members of limited liability companies, we interpret R.C.1705.21(A) as the legislature's attempt to provide a personal representative with such rights, in order to preserve the decedent's personal property pending administration of the estate. As we noted, R.C.1705.15 divests members of their rights upon death. Absent some statutory authority, the personal representative (to whom the personal property has passed), would be unable to petition for an accounting. By the same token, we do not believe the legislature intended personal representatives to enter into daily business operations of limited liability companies for an extended period, since R.C. 1705.21(A) does indicate some intent to restrict a personal representative's rights.
 {¶ 40} In this regard, the statute says that a representative may exercise a decedent's rights as a member "for the purpose of settling the estate and administering his property." This is not an unlimited grant of authority. The reason for restricting intervention is that an administrator or executor may know nothing about the business and may negatively impact a company's daily operations. Compare R.C. 2113.30
(which restricts a personal representative's ability to operate a sole proprietorship without incurring personal liability for losses. Under this statute, the representative may operate the business for only four months, absent court approval for a longer term, and must make monthly reports to the court).
 {¶ 41} Despite a possible lack of knowledge about the business, a personal representative should be able to protect the estate's assets from waste or fraud. Since a non-member normally does not have the right to bring an action for an accounting, or an action for judicial dissolution, some method must exist by which a non-member personal representative may enforce the decedent's interest and protect the assets of the estate.
 {¶ 42} In a similar context, the Ohio Supreme Court decided inLehtinen that a surviving spouse and executor obtained title to the decedent's share in a professional association by operation of law, and had standing to bring an action against the other shareholders for an equitable accounting, constructive trust, conversion, and breach of fiduciary duty. 2003-Ohio-2574, at ¶s 8-11, and 43-45. Lehtinen involved a professional association of doctors. Under R.C. 1785.07, shareholders of professional associations may sell or transfer shares only to other members of the same profession. Id. at ¶ 9. After one doctor died, his executrix brought an action against the remaining shareholders because they had failed to distribute any profits to her. However, the trial court dismissed the case because the executrix was a non-professional and was not entitled to own shares in a professional association. Id.
 {¶ 43} The Ohio Supreme Court concluded that the transfer of personal property to the decedent's personal representative occurred by operation of law. The court then noted that while R.C. 1785.07 restricted voluntary transfers, it was silent on the issue of transfers by operation of law. Id. at ¶ 18-19. In this regard, the court observed that:
 {¶ 44} "[a]bsent a provision to the contrary, restrictions on the transfer of corporate shares of stock, whether contained in the articles of incorporation, bylaws, or in a separate agreement among the shareholders, are overwhelmingly held to apply only to voluntary transfers and not to transfers by operation of law. * * * Thus, while there is some disagreement as to whether restrictions on the transfer of shares should apply to subsequent transfers by an executor to specific legatees or to others, there is no disagreement that title to the decedent's shares initially passes to the estate's personal representative notwithstanding the restriction." Id. at ¶ 25 (citations omitted).
 {¶ 45} The court, therefore, concluded that title to the shares vested in the executrix upon her appointment and passed to her by operation of law. Id. at ¶ 38. The effect of this holding was that the executrix could hold title to the shares notwithstanding the fact that she was a non-professional, and could maintain an action for an accounting, breach of fiduciary duty, and so forth. Id. at ¶ 43.
 {¶ 46} In arguing that Mrs. Holdeman has only limited economic rights, Epperson relies on cases from other jurisdictions, in which courts have refused to let executors be recognized as limited partners, absent compliance with the operating agreement. These cases do not deal with limited liability companies, but do involve similar statutory provisions giving personal representatives rights after the death of a limited partner. See, e.g., Frye v. Manacare Limited (Fla.Ct.App. 1983),431 So.2d 181. In Frye, the court of appeals found that an executor did not have the power to appoint herself a substitute limited partner for all purposes. In particular, the court relied on a buy-out provision that gave the partnership the right to purchase the deceased partner's share, and prevented transfer of the decedent's interest to anyone other than the partnership. Id. at 183. As a result, the court found that the executor possessed:
 {¶ 47} "restricted `rights of a limited partner for the purpose of settling [decedent's] estate' * * *. This would normally include carrying through with the buy-out process and participation as necessary until the completion of the buy-out or other settlement of the estate's interest in the partnership. A general partner testified that appellant received notification of all partnership meetings, was allowed to attend and vote, was provided with financial and tax information, and was generally treated as `any other,' obviously meaning any other partner." Id. (Emphasis and parenthetical material in original.)
 {¶ 48} The court of appeals in Frye also held that the executor's request for an accounting had been unlawfully denied. Id. at 184. Because these powers are substantial, we do not think Frye is as restrictive as Epperson suggests. Frye indicates that executors are entitled, at a minimum, to be notified of meetings, to attend and vote, to be provided with financial information, and to be treated like any other partner during administration of the estate. See, also, Friedberg v. Hague ParkApts. (Va.Cir.Ct. 2001), 61 Va. Cir. 589, 2001 WL 34157952, *6 (holding that an executor of a deceased limited partner assumes all powers previously held by the limited partner through the administration period and may exercise those powers for the purpose of settling the estate).
 {¶ 49} By holding that the estate in this case was entitled to assert the decedent's member rights, we are not saying anything different than the courts in Frye and Friedberg did. In particular, we do not find that Mrs. Holdeman has the ability to appoint herself or anyone else as a member without complying with the operating agreement. To the contrary, Mrs. Holdeman is simply entitled to exercise the member powers that Mr. Holdeman had before death, during the period of her administration and for purposes of settling the estate.
 {¶ 50} As we mentioned, we have also reviewed statutes from other jurisdictions that pertain to limited liability corporations. Generally, death is among the events that terminate an individual's status as a member. See, e.g., Ariz. Rev. State. Ann. 29-733 and Ky. Rev. Stat. Ann.275.280. Several states have statutes like R.C. 1705.21, in that they allow personal representatives to exercise members rights during the administration period, for purposes of settling the estate. See, e.g., Cal. Civ. Code 17304 and Del. Code Ann., Title 18, Section 705. However, we were unable to find any cases discussing the specific extent of rights a personal representative takes after the death of a member of a limited liability corporation.
 {¶ 51} Ohio has been cited as being among states providing that "for the purpose of settling the estate, the estate retains all of the decedent's rights as a member, including presumably the right to withdraw or otherwise voluntarily dissociate and receive the value of the interest, unless all dissociations are made wrongful in the operating agreement." Bishop, Treatment of Members Upon their Death and Withdrawal from A Limited Liability Company: The Case for a Uniform Paradigm (1995), 25 Stetson L. Rev. 255, at 299.
 {¶ 52} We also note that some state statutes specifically limit the rights of personal representatives. For example, Alabama provides that personal representatives only have financial rights. Ala. Code 10-12-34. In addition, other states limit a personal representative's rights to those of an assignee only. See, e.g., Mo. Stat. Ann. 347.117; Minn. Stat. Ann. 308B.611(8)(b)(1); and Idaho Code 53-639. Assignees typically have rights only to profits and distributions, not to any type of management and control. See, e.g., Idaho Code 53-636(1)(b) and (c), and R.C. 1705.18 (assignment of a membership interest allows an assignee to receive distributions of cash and other property, but does not entitle the assignee to exercise member rights).
 {¶ 53} Even more significant is the fact that Oklahoma's statute used to be identical to R.C. 1705.21(A). Oklahoma subsequently amended the statute, and now limits the rights of personal representatives to those of an assignee of the member's interest. 18 Okla. Stat. Ann. 2036(B). Notably, if Oklahoma felt that the prior statute only entitled personal representatives to receive distributions, it would not have amended the statute. This is an additional reason why R.C. 1705.21(A) should be interpreted as allowing executors to assert all member rights that a decedent possessed prior to death.
 {¶ 54} Accordingly, the trial court did not err in finding that Mrs. Holdeman is entitled to exercise all the member rights that Daniel Holdeman possessed before his death. We again stress the limitation that member rights may be exercised only during the period of administration, for the purpose of settling the estate.
 {¶ 55} One additional matter remains for discussion. In "Argument II" of her brief, Mrs. Holdeman claims that Appellants' counsel should be disqualified, due to a conflict of interest. Specifically, the same attorney represents both the Company and its minority stockholder, Epperson. We decline to address this point, since the trial court did not rule on the matter.
 {¶ 56} In light of the preceding discussion, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
FAIN, J., concurs.