OPINION
{¶ 1} Plaintiff-appellant/cross-appellee, Melvin W. Wolf, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, regarding property division and child support obligations following his divorce from defendant-appellee/cross-appellant, Kathleen M. Wolf.[1] We affirm the decision of the domestic relations court. *Page 2 
 {¶ 2} The parties were married on November 13, 2004. The marriage produced one child, a daughter, born in September 2005. Appellant filed a complaint for divorce on October 3, 2006, and the parties formally separated approximately two months later, on December 1. On December 6, 2006, the court entered a temporary order requiring appellant to pay $1,600 per month in child support in addition to day care expenses for the parties' daughter.
 {¶ 3} The evidence presented at the final hearing on November 30, 2007 established the following relevant facts. For nearly 20 years, appellant was an employee and shareholder of two closely-held business entities, Mel's Auto Glass, a subchapter "S" corporation, and Wolf Real Estate, a limited liability company. Appellant was a 49 percent shareholder of Mel's Auto Glass and a 50 percent shareholder of Wolf Realty. Lisa Wolf, appellant's former wife, was also an employee of both companies and the only other shareholder. Appellant received a weekly salary of $2,250 from Mel's Auto Glass as well as a shareholder distribution of $5,000 per week. Appellant also received $60,000 per year in shareholder distributions from Wolf Realty. His salary and shareholder distributions from both companies totaled $437,000 in 2006. The court found that appellant's federal and state tax obligations in the amount of $229,444 were also paid by the companies. In totaling these amounts, the court determined appellant's 2006 gross income to be $666,444.
 {¶ 4} Appellee testified that she was a communications director at an area hospital for several years prior to her marriage to appellant. During that time, her income was approximately $78,000 per year. After her marriage, she was employed for a short time at a law firm earning approximately $60,000 per year. She testified that she did not work outside the home after the parties' daughter was born, but after separating from appellant, she *Page 3 
became employed with Wordsworth Communications. Although the court noted that appellee's testimony regarding her income "lacked credibility," the court reviewed a July 2007 paystub and determined her income to be $68,500 per year. The court stated that it was likely appellee had been given a raise in the interim, but there was no evidence presented to establish the amount.
 {¶ 5} In its December 6, 2007 decision, the court awarded custody of the parties' daughter to appellee and appellant was ordered to pay child support in the amount of $4,000 per month, plus a two percent processing fee. The court further determined, based on the parties' stipulation at the hearing, that with the exception of one joint account, the bank accounts of each party were to be considered separate property.
 {¶ 6} Appellant filed a motion for reconsideration, requesting, in part, that the court address the alleged issue of an increase in appellee's "checking and savings accounts." The court denied his motion, stating that the issue of separate accounts was stipulated to at the hearing, and if there were any issues with regard to the accounts, "it was still necessary for [appellant] to ask to withdraw the stipulation or otherwise raise the issue."
 {¶ 7} The court subsequently incorporated its December 6, 2007 decision into a final decree of divorce on March 17, 2008.
 {¶ 8} Appellant appealed the trial court's decision and raises three assignments of error for our review. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE [sic] APPELLANT BY NOT ORDERING THE RETURN OF THE $5,000.00 THAT APPELLANT PAID OF APPELLEE'S ATTORNEY'S FEES."
 {¶ 11} In his second assignment of error, appellant argues that the trial court erred in *Page 4 
failing to order appellee to reimburse him for approximately $5,000 in attorneys fees allegedly paid on behalf of appellee. During the pendency of this appeal, appellant indicated his desire to withdraw this particular assignment of error. Accordingly, we will neither address nor consider arguments pertaining to this issue.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE [sic] APPELLANT IN FAILING TO DIVIDE UP APPELLEE'S CHECKING AND SAVINGS ACCOUNTS."
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred in failing to equitably divide the funds contained in appellee's checking and savings accounts at Fifth Third Bank. Specifically, appellant challenges the court's determination that a stipulation was entered into regarding the accounts.
 {¶ 15} A stipulation is a "[v]oluntary agreement * * * concerning [the] disposition of some relevant point so as to obviate [the] need for proof[.]" State v. Abercrombie, Clermont App. No. CA2001-06-057, 2002-Ohio-2414, ¶ 27. (Internal citations omitted.) Appellant directs our attention to the following discussion, which took place between the court and counsel for both parties during the hearing:
 {¶ 16} "[THE COURT]: All right, what about the bank accounts? Do we have any issues on bank accounts?
 {¶ 17} "[APPELLEE'S ATTORNEY]: Yes, [y]our Honor. There is a joint bank account at First Financial and, prior to the physical separation of the parties, [appellant] removed most of the funds from that account.
 {¶ 18} "[THE COURT]: Now I mean, * * * are there any agreements on that? I knew there was an issue on the bank account; there was a cash withdrawal issue. * * * Are they each [going to] keep their own individual checking accounts? Is this the only account that's at issue, this [First Financial] account? *Page 5 
 {¶ 19} "[APPELLEE'S ATTORNEY]: I believe that's the only account at issue.
 {¶ 20} "[THE COURT]: Okay.
 {¶ 21} "* * *
 {¶ 22} "[THE COURT]: Other than that, they're [going to] keep their own accounts?
 {¶ 23} "[APPELLEE'S ATTORNEY]: Correct.
 {¶ 24} "[APPELLANT'S ATTORNEY]: Do you have those records from Fifth Third?
 {¶ 25} "[APPELLEE'S ATTORNEY]: I . . . I do, but not copied."
 {¶ 26} Appellant argues that the foregoing exchange did not evidence his stipulation that appellee's Fifth Third Bank checking and savings accounts were to be considered her separate property, since the bank records at issue "had not been produced at the time the stipulations were being discussed." Appellant further contends that his cross-examination of appellee regarding the accounts demonstrates that he was unaware of any stipulation.
 {¶ 27} Upon review of the record, we find that appellant acquiesced to the stipulation in failing to respond to the court's question or object to appellee's representation to the court that there was an agreement regarding the accounts. See, also, State v. Crawford, Wood App. No. WD-98-041, 1999 WL 197792, *4 (concluding that a party acquiesces to a stipulation when failing to respond to another party's representation to the court that an agreement has been reached). We also note that the court asked the parties several times during the course of the hearing whether there were any outstanding issues or whether the court had forgotten any issues to be resolved. Even after cross-examining appellee regarding her account transactions, appellant failed to inform the court of a possible issue.
 {¶ 28} Based on the foregoing, we conclude that any error alleged by appellant was invited by his failure to object or otherwise raise the issue with the court at the hearing. Abercrombie, 2002-Ohio-2414 at ¶ 27. "A party will not be permitted to take advantage of an error which he himself invited or induced the court to make." Id. at ¶ 28, quotingLester v. *Page 6 Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus. Appellant's first assignment of error is therefore overruled.
 {¶ 29} Assignment of Error No. 3:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE [sic] APPELLANT IN SETTING THE CHILD SUPPORT AND PAYMENT OF THE DAYCARE EXPENSES."
 {¶ 31} In his third assignment of error, appellant argues that the trial court erred in ordering him to pay $4,000 per month in child support. Appellant challenges the court's calculation of his gross income and also claims that the support order is "exorbitant" in light of the fact that he is also paying monthly day care expenses in the approximate amount of $1,153 pursuant to the court's November 2006 order.
 {¶ 32} The child support system is designed to protect the child and his or her best interest. Zollar v. Zollar, Butler App. No. CA2008-03-065, 2009-Ohio-1008, ¶ 21. As a result, a trial court's decision regarding child support obligations falls within the discretion of the court and will not be disturbed absent a showing of an abuse of discretion. Pauly v. Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-105. An abuse of discretion is more than error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 33} With regard to the calculation of his gross income, appellant argues generally that the court's inclusion of the closely-held corporations' payment of his personal tax liability in the amount of $229,444 was "grossly unfair." Appellant fails to cite any legal authority in support of his argument.
 {¶ 34} At the outset, we note that subchapter "S" corporations and limited liability companies are treated for tax purposes as proprietorships or partnerships, and their earnings are taxed as if they are the personal earnings of the individual shareholders. See, e.g.,Green v. Green, Butler App. No. CA2001-07-171, 2002-Ohio-2180, ¶ 21;Holdeman v. *Page 7 Epperson, Clark App. No. 2004-CA-49, 2005-Ohio-3750, ¶ 33. The income of those corporations is "passed-through" to the shareholders. As a result, the shareholders pay income taxes on corporate earnings together with any individual taxable income they may have. Green at ¶ 21.
 {¶ 35} For purposes of calculating child support, R.C. 3119.01(C)(5)(a) defines income, in part, as follows: "[f]or a parent who is employed to full capacity, the gross income of the parent." "`Gross income' means * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, * * * dividends; * * * self-generated income; * * * and all other sources of income. `Gross income' includes * * * potential cash flow from any source." R.C. 3119.01(C)(7).
 {¶ 36} Upon review of the record, it is apparent that the tax payments were an integral part of appellant's yearly compensation, and thus properly included in the calculation of his gross income. Appellant's accountant testified that the tax payments were made in the form of corporate distributions on appellant's behalf. Although payments of this nature are not characterized as income and do not appear on appellant's tax return, they may be considered "potential cash flow from any source" pursuant to R.C. 3119.01(C)(7) because the company distributions were used to satisfy appellant's personal tax liability. Additionally, there is no evidence to suggest that these were one-time payments that would be excluded from appellant's gross income calculation as a nonrecurring or unsustainable cash flow item. See R.C. 3119.01(C)(7)(e).
 {¶ 37} Turning our attention to appellant's argument that the support order was "exorbitant," we note that the court referenced R.C. 3119.04(B) in its decision, stating that it was required to determine the amount of child support on a case-by-case basis given that the gross income of the parties exceeded $150,000. R.C. 3119.04(B) provides, "[i]f the *Page 8 
combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 38} This court has previously concluded that in exercising its discretion under R.C. 3119.04(B), a trial court is required to determine the amount of the child support obligation by "considering the `needs and the standard of living' of the parties' child and of the parties themselves." Vaughn v. Vaughn, Warren App. No. CA2007-02-021,2007-Ohio-6569, ¶ 13. Accordingly, "as long as the amount ordered is not less than if the combined gross income of both parents was $150,000, the trial court need not make any specific findings." Ornella v.Ornella, Hancock App. No. 5-07-50, 2008-Ohio-2404, ¶ 5. See, also,Cyr v. Cyr, Cuyahoga App. No. 84255, 2005-Ohio-504, ¶ 53 (noting that R.C. 3119.04[B] does not require the court to provide any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000).
 {¶ 39} In this case, the court prepared a basic child support worksheet and concluded that if $150,000 was used to determine the amount of support, appellant would be obligated to pay appellee $1,071.88 per month including the two percent processing fee. The court then prepared a separate worksheet using the parties' combined gross income and *Page 9 
determined that if this income level was used, appellant would be required to pay $5,160.26 per month including the processing fee.
 {¶ 40} The court noted that the child would have enjoyed "a very, very nice standard of living had the parties remained married." Based on the testimony at the hearing, the court further noted that the child's lifestyle would have included second homes, nice vacations and a private school education. In light of the standard of living of the child and of the parents, the court concluded that it would be "unjust and inappropriate and not in the best interests of the minor child" to establish appellant's child support obligation under the basic child support worksheet for parents with a combined gross income of $150,000. In exercising its discretion pursuant to R.C. 3119.04(B), the court established appellant's obligation at $4,000 per month plus the two percent processing fee.
 {¶ 41} Appellant argues that the court's award constitutes an abuse of its discretion in light of its previous order requiring appellant to pay day care expenses, which appellant testified were at a cost of $1,153 per month, as well as the fact that appellant is paying child support for three other children he has with Lisa Wolf, totaling $57,200 per year. Appellant argues that the court failed to take into consideration the effect of the order on his lifestyle, which he contends is now "impossible" to maintain given the amount of the order.
 {¶ 42} Appellant correctly notes that in making a child support determination, the court must "ensure that the obligor parent is not so overburdened by child support payments that it affects that parent's ability to survive." Seibert v. Tavarez, Cuyahoga App. No. 88310,2007-Ohio-2643, ¶ 36. In this case, however, the record is devoid of any evidence to indicate that an award of this amount creates a financial hardship for appellant, or otherwise overburdens him in light of his additional monetary obligations. The trial court acknowledged that appellant pays $57,200 per year for the support of the children he has with Lisa Wolf. However, the court also found that Lisa Wolf earns the same yearly income as appellant as *Page 10 
an employee and shareholder of the closely-held entities. In contrast, there is a large disparity between the annual income of appellant and that of appellee.
 {¶ 43} Based on the foregoing, we conclude that appellant has failed to demonstrate that the trial court's child support order was unreasonable, arbitrary or unconscionable so as to constitute an abuse of its discretion. Appellant's third assignment of error is therefore overruled.
 {¶ 44} Judgment affirmed.
YOUNG and POWELL, JJ., concur.
[1] Our review of the appellate record reveals that appellee filed a notice of cross-appeal in this matter. However, appellee's merit brief failed to raise any assignments of error in support of her cross-appeal. Pursuant to Loc. R. 15(E), appellee's cross-appeal is therefore dismissed for failure to prosecute. See, also, Ferrero v. Ferrero, Stark App. No. 98-CA-00095, 1999 WL 744431, fn. 2. *Page 1