[Cite as *Ghanayem v. Ghanayem*, 2020-Ohio-423.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


ANNALISA M. GHANAYEM,                       :

    Appellee and Cross-Appellant,         :        CASE NOS. CA2018-12-138
                                                         CA2018-12-142
                                                  :

    - vs -                                :        O P I N I O N
                                                     2/10/2020
                                                    :

DARREN W. GHANAYEM,                          :

    Appellant and Cross-Appellee.         :


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 16DR39199


Diehl & Hubbell, LLC, Martin E. Hubbell, 304 East Warren Street, Lebanon, Ohio 45036, for appellee and cross-appellant

John D. Smith Co., LPA, John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellant and cross-appellee


**RINGLAND, P.J.**

{¶ 1}   Appellant/Cross-appellee, Darren Ghanayem ("Husband"), appeals from a decision of the Warren County Court of Common Pleas, Domestic Relations Division, following his divorce from appellee/cross-appellant, Annalisa Ghanayem ("Wife"). Wife also appeals from the trial court's decision. For the reasons detailed below, we affirm.

{¶ 2}   Husband and Wife were married in 2000 and had one child born during the

marriage. Husband is a corporate executive and the sole income provider for the family for a number of years. Though it is not the sole issue raised in this appeal, this dispute, in large part, concerns Husband's compensation structure and the calculation of his support obligations.

{¶ 3} Prior to the marriage, Husband worked for several companies, earning both income and retirement benefits that are contested in this appeal. In 2006, Husband began working for Anthem, Inc. ("Anthem") and the family moved to California. The parties remained in California until 2015 when Husband was transferred to another position within the company in Ohio.

{¶ 4} In 2016, Husband interviewed for and subsequently accepted a position as Chief Information Officer ("CIO") with WellCare Health Plans, Inc. ("WellCare"). The position with WellCare required Husband to relocate to Florida. The family initially prepared to move with Husband, but ultimately Wife expressed her desire to stay in Ohio with their daughter. These divorce proceedings followed. A final hearing was held before the trial court on May 21, 2018.

{¶ 5} During the hearing, the parties argued about Husband's income structure. In relevant part, WellCare compensates Husband through these three sources: (1) his salary, (2) a Short Term Incentive ("STI") bonus, and (3) Long Term Incentive Program ("LTIP").

{¶ 6} The calculation of Husband's STI bonus is done by WellCare's compensation committee based on the achievement of certain performance objectives. The target rate for the STI bonus is 50 percent of Husband's annual base salary. In 2016, Husband earned a $390,000 base salary, along with a $60,000 signing bonus. Since he had just begun, Husband did not earn an STI bonus. In 2017, Husband earned $410,000 base salary and received a prorated STI bonus of $254,000. In 2018, Husband earned a $425,000 base

salary and received a $430,000 STI bonus.

{¶ 7}   Unlike his salary and STI bonus, Husband's LTIP bonus is awarded in shares of the company, a publicly traded entity.  Husband's LTIP bonus is set at a target rate of 120 percent of his base pay, consisting of an award mix of "restricted stock, performance stock units, and market stock units."  Husband testified about two categories of LTIP benefits that he receives.  The first is Restricted Stock Units ("RSUs") that are subject to various vesting schedules.  The second category of LTIP is Performance Stock Units ("PSUs").  PSUs "cliff vest" every three years, which means that the stocks are not "earned" until the company metrics are calculated three years after the shares are "awarded."[1]  After three years, the metrics are calculated, and the shares are either "earned" or "unearned."

{¶ 8}   Husband explained that the vesting or award of RSUs and PSUs have tax consequences.  Each time an RSU vests, or a PSU is earned, Husband stated that he must pay tax on the fair market value of the stock at the time of vesting.  The company is allowed to withhold some percentage of stock to cover a portion of the taxes, but according to Husband, he is in a higher tax bracket and the amount withheld does not reflect the actual amount owed.

{¶ 9}   Husband further argued that, even though he is earning something of value through the LTIP benefits, he does not have access to the funds in the LTIP account.  Husband testified that he is presently unable to sell the shares for at least two reasons. First, Husband testified that, as an executive officer in his company, he is required to own stock in the company at a value of two times his annual base salary.  Husband must maintain that level of stock ownership until he ends his employment with the company, or the company is taken over.  Second, Husband stated that in order to sell shares that exceed the minimum

holding requirement, he must receive approval to sell from the compensation committee. Husband testified that he is subject to blackout periods due to company policy. As of the date of trial, Husband testified that he is subject to an indefinite blackout period because he is part of a confidential company committee.

{¶ 10} From Wife's perspective, Husband's LTIP bonus is income to Husband and therefore should be considered in an analysis for child support and spousal support. From Husband's perspective, he argues: (1) this money is his post-divorce retirement, which should not be divided, and (2) there is a logistical complexity to dividing these bonuses due to tax and stock trading issues.

{¶ 11} The trial court issued three orders with respect to the LTIP benefits. In a June 18, 2018 decision, the trial court noted that it "heard argument about this program, but little testimony." Nevertheless, having heard the arguments, the trial court found "there is truth in both positions. It *is* income to Husband and it *is* money for another day, which is what a retirement account is for." The trial court also noted:

> [T]his long-term incentive program is cleverly designed and drafted so as to both tie it to performance standards and at the same time avoid funding limits and/or tax issues that constrain "qualified" retirement plans.

Following its review of the evidence, the trial court concluded that the LTIP bonus should be considered income for purposes of calculating spousal and child support.

{¶ 12} In an October 17, 2018 "Clarification" Entry, the trial court noted that the parties disagreed on the specific language that should be included in the final judgment entry. The trial court stated that Wife "is awarded 34% of the gross income Husband receives as part of this long-term incentive bonus" as spousal support and "7% of the gross income Husband

---

1. The parties use differing terms for when PSUs are earned. During his testimony, Husband was adamant against using the term "vest," instead preferring the term "accomplished." This court recognizes the distinction that the RSUs "vest," while the PSUs are "earned" and will use those terms throughout the opinion.

receives as part of this long-term incentive bonus" as child support. The trial court also indicated that "Wife's interest shall terminate once the term of spousal support ends if Husband's LTIP award is conditioned on continued employment after termination."

{¶ 13} Finally, in its November 9, 2018 final appealable order, the trial court found:

Husband is a participant in his company's long-term incentive bonus program ("LTIP"). Effective March 1, 2016, and for as long as Wife receives spousal support, she shall receive as spousal support 34% of all gross income Husband receives in this LTIP. This payment shall be made directly to Wife and not through the CSEA. When forwarding Wife's share, Husband shall also forward a copy of the total bonus to verify why he is paying the amount he paid. All LTIP spousal support shall be includable in Wife's gross income for income tax reporting purposes, and therefore deductible by Husband.

Husband shall transfer Wife's interest to her as soon as allowable, and into her separate account.

Additionally, or perhaps independently if spousal support has terminated, Wife shall also receive, and as for child support, 7% of the gross income Husband receives as part of this long-term incentive bonus. The child support shall be paid in the same manner as the spousal support provisions in this Section VII, effective March 1, 2016. But this LTIP child support shall be paid directly to Wife and not through the CSEA. This payment shall not be taxable to [Wife], nor deductible by [Husband].

{¶ 14} The trial court then divided the marital property, established the parenting schedule, and entered a final decree of divorce. Husband appeals the trial court's decision, raising four assignments of error. Wife cross-appeals, raising two cross-assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN TREATING DARREN'S LTIP BENEFITS AS INCOME FOR PURPOSES OF DETERMINING SPOUSAL AND CHILD SUPPORT.

{¶ 17} In his first assignment of error, Husband argues the trial court erred by including his LTIP bonus in the calculation of his spousal and child support obligations. On appeal,

Husband argues that his LTIP account is a "retirement" account that should be excluded from the calculation of child and spousal support. Husband also raises a secondary argument that, if the LTIP benefits are income for purposes of determining support, then the trial court erred by failing to order a more specific methodology or calculation so that Wife can share the tax consequences. We find Husband's argument to be without merit.

{¶ 18} A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 8. According to R.C. 3105.18(C)(1), "the court shall consider" the statutory factors, such as income of the parties, earning abilities of the parties, ages, duration of marriage, standard of living, education of parties, and assets. *McCarty v. McCarty*, 12th Dist. Warren Nos. CA2016-07-055 and CA2016-07-056, 2017-Ohio-5852, ¶ 17. A reviewing court will presume each factor was considered, absent evidence to the contrary. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 42.

{¶ 19} As to child support determinations, trial courts are required to include bonuses as income. *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 22. The version of R.C. 3119.01(C)(7) in effect at the time defines "gross income" as the "total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses."[2] Gross income does not include "nonrecurring or unsustainable cash flow items" which are defined as income that a parent receives in any year, not to exceed three years that the parent does not expect to receive on a regular basis. *Id.* at (C)(7)(e) and (C)(8).

{¶ 20} A trial court has broad discretion in determining spousal and child support

_____

2. Effective March 28, 2019, the definition for gross income is found in R.C. 3119.01(C)(12) and (13).

obligations, which will not be disturbed absent an abuse of discretion. *Kedanis*, 2012-Ohio-3533 at ¶ 10; *Grilliot-Saddler v. Saddler*, 12th Dist. Warren No. CA2017-09-134, 2018-Ohio-1689, ¶ 14.

{¶ 21} In this case, the trial court awarded Wife spousal support for 60 months based on income Husband receives from his salary, STI bonus, and LTIP bonus. Husband's child support obligation is also based on the income he receives from his salary, STI bonus, and LTIP bonus. Aside from his arguments relating to child support raised in his second assignment of error, Husband does not otherwise present argument with respect to the calculation of support owed due to his salary and STI bonus. Instead, Husband's argument is based on objection to the inclusion of his LTIP bonus in the calculation of the support orders.

{¶ 22} Following review, we find the trial court did not err by including Husband's LTIP bonus in the support obligation calculation. We begin by noting that Husband's description of his LTIP account as a "retirement" account is unsupported by the record. As correctly noted by the trial court, there was much argument on this topic, but little testimony. Husband did not introduce the full LTIP plan into the record, but it is undisputed that the LTIP account is a "non-qualified" plan. There are no minimum vesting or distribution requirements, as required by qualified plans, nor is there a clearly articulated prohibition on assignment or alienation. Though Husband characterizes the LTIP account as a retirement plan, the record does not support a finding that the LTIP account is a "retirement" account in anything but a colloquial sense of the term. In fact, Husband testified that he could theoretically sell 476 shares of stock and continue to meet the minimum holding requirement but could not do so because he is under a "blackout period." Contrary to Husband's argument otherwise, the LTIP bonus is simply a bonus, which can appropriately be considered in the calculation of his support

obligations. *See Ornelas*, 2012-Ohio-4106 at ¶ 46 (percentage of bonus allowable in spousal support calculation); former R.C. 3119.01(C)(7) (bonus included in "gross income" in child support calculation). As a result, we decline to adopt Husband's characterization of the LTIP account as a "retirement" account that should be excluded from the support orders.

{¶ 23} Husband's secondary argument alleges the trial court erred by failing to order a specific methodology to address the tax consequences of his LTIP bonus. Husband maintains that he identified and proposed an appropriate method for addressing the tax issues in his closing trial memorandum. In that memorandum, Husband argued that Wife should only be entitled to "a percentage share of Husband's LTIP Benefits as they vest and are tradable," under his proposed circumstances:

> Wife should only receive benefits that actually vest and are tradable during the period of spousal support;
>
> Whatever percentage Wife should receive, she should be responsible for her share of the upfront payment of income taxes that are not satisfied by the shares sold by the company and remitted to the Federal Government;
>
> Wife should be responsible for her share of both FICA and Medicare taxes that are taken out because those taxes are wholly paid by Husband as "earned income" and would not be payable by Wife as unearned income for payment of spousal support;
>
> Wife should be required to advance pay, as Husband does, her share of all such taxes because they are incurred when vested as opposed to incurred when the stocks are in fact traded at a different price than the vesting price;
>
> When the shares are sold to Wife's income from same as payment of spousal support to her should be taxable to her and deductible by Husband to the extent that any such taxes have not yet been paid in accordance with the above; [sic]
>
> Husband's obligation should earlier terminate on his or Wife's death, Wife's remarriage or cohabitation.

{¶ 24} We find Husband's secondary argument is also without merit. Part of the

confusion surrounding this matter is the way in which the parties characterize the LTIP bonus and LTIP account. In his appellate brief, Husband cites this court's standards for reviewing a property division, as opposed to the calculation of support obligations. This is ostensibly because he views the LTIP account as his retirement plan or a separate property interest. However, as noted above, the record does not support a finding that Husband's LTIP account is a retirement plan. Rather, the LTIP bonus is appropriately considered "gross income" for purposes of calculating Husband's support obligations.

{¶ 25} However, based on review of Husband's argument, there is perhaps one issue that should be clarified and that is the distinction between the value of the shares in Husband's LTIP account and the LTIP bonus that Husband receives each year that is calculable in his support obligation. As noted above, Husband vests or earns more shares in his LTIP account each year. When the RSUs vest, or the PSUs are earned, there is a taxable event that Husband must account for. However, since Husband is purportedly not selling those shares, it is possible that those shares could gain or decrease in value. Pursuant to the trial court's order, Wife is entitled to 34 percent of the "gross income" Husband receives as part of his LTIP bonus over the course of the spousal support order and seven percent of the LTIP bonus for child support. We understand the trial court's order as calculating the support obligations based on the LTIP bonus vested or earned each year. We do not understand the trial court's order to suggest that Wife has a separate property interest in the shares held in the LTIP account.

{¶ 26} With that in mind, we find the trial court did not abuse its discretion in the way it ordered the support obligation. In this case, the trial court included Husband's LTIP bonus in the calculation of his support obligations. Pursuant to that order Wife is entitled to 34 percent of the gross income he receives each year that the spousal support order is in effect. The

trial court ordered spousal support for a limited duration of 60 months. Consistent with applicable law, the trial court ordered "[a]ll LTIP spousal support shall be included in Wife's gross income for income tax reporting purposes, and therefore deductible by Husband." As for child support, Wife is entitled to seven percent of the gross income Husband receives each year as part of his LTIP bonus. Also consistent with applicable law, "[t]his payment shall not be taxable to [Wife], nor deductible by [Husband]." Furthermore, with respect to Husband's claim that the trial court failed to consider the tax implications, we note the trial court found that "there was no evidence presented" on that topic. Having reviewed the record, we agree with the trial court that no such implications were discussed aside from the simple fact that Husband must, indeed, pay taxes when shares vest or are earned.

{¶ 27} Since the trial court did not error or abuse its discretion, we find Husband's first assignment of error to be without merit. Therefore, Husband's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED IN "UNCAPPING" DARREN'S CHILD SUPPORT OBLIGATION WHERE THERE WAS NO EVIDENCE TO SUPPORT AN UPWARD DEVIATION AND ANNALISA HAS SUFFICIENT INCOME TO MEET THE CHILD'S NEEDS.

{¶ 30} In his second assignment of error, Husband alleges the trial court erred by "uncapping" his child support obligation. We disagree.

{¶ 31} R.C. 3119.04 governs child support calculations when the combined gross income of the parents exceeds $150,000 per year. Specifically, former R.C. 3119.04(B) provides that if the combined gross income of both parents is greater than $150,000 per year, the trial court "shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living" of the child and

the parents.[3]

{¶ 32} Former R.C. 3119.04(B) eliminated the prior requirement that trial courts extrapolate to determine the appropriate amount of child support when the combined gross income of the parents exceeds $150,000. *Grilliot-Saddler*, 2018-Ohio-1689 at ¶ 16; *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 53 (explaining the extrapolation method). Former R.C. 3119.04(B) "does not prohibit trial courts from extrapolating, nor does the $150,000 amount constitute a 'cap' that trial courts may not exceed." *Grilliot-Saddler* at ¶ 14. In exercising its discretion, the trial court is required to consider the needs and standard of living of both the parties' child and the parties themselves. *Wolf v. Wolf*, 12th Dist. Warren No. CA2008-03-045, 2009-Ohio-1845, ¶ 38. Accordingly, "as long as the amount ordered is not less than if the combined gross income of both parents was $ 150,000, the trial court need not make any specific findings." *Id.*

{¶ 33} A decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 18.

{¶ 34} In calculating Husband's child support obligation, the trial court found it "would be unjust and inappropriate and not in the best interests of the child to compute child support as if the combined gross incomes are less than $150,000." Though the trial court did not enter detailed findings in this regard, it was not required to as the amount of child support awarded was not less than the amount of child support awarded for a combined gross income of $150,000. *Grilliot-Saddler* at ¶ 18. Nevertheless, the trial court found the family enjoyed a "lavish lifestyle" during the marriage. This finding is supported by the record, as the parties' assets accumulated during the marriage include luxury vehicles, motorcycles,

---

3. Effective March 28, 2019, R.C. 3119.04 is no longer separated into subsections (A) and (B).

four-wheelers, and expensive jewelry. Husband has earned a base salary of $390,000, $410,000, and $425,000 from 2016-2018 and is entitled to STI bonuses of approximately 50 percent of his annual base salary and LTIP benefits discussed above. To the contrary, Wife's imputed income is $34,250 per year. Wife remains in the marital home valued at $625,000, while Husband purchased a home in St. Petersburg, Florida, which the trial court valued at $850,000.

{¶ 35} Following review, we find the record plainly reflects that the needs and standard of living of the child and the parties were considered in the calculation of Husband's child support obligation. In light of the foregoing, we find that the trial court did not abuse its discretion in ordering Husband to pay child support at $2,506.77 per month, along with seven percent of his bonuses. Husband's second assignment of error is overruled.

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE TRIAL COURT ERRED IN INCLUDING A 2% PROCESSING FEE ON TEMPORARY SUPPORT OBLIGATIONS THAT DARREN PAID DIRECTLY TO ANNALISA.

{¶ 38} In his third assignment of error, Husband argues the trial court erred by including a two percent processing fee for the temporary support obligation that he paid directly to Wife. Wife agrees that no processing fees should be collected for any temporary support paid directly to her but notes that the parties had not yet completed an audit to determine if involvement by the Warren County Child Support Enforcement Agency ("CSEA") will be necessary. Following review, we find Husband's argument is premature, or is based on a misunderstanding of the trial court's order.[4]

---

4. Husband cites the trial court's June 18, 2018 decision, however the November 11, 2018 decree and final appealable order states "[t]he parties shall conduct an audit of both child support and spousal support. If the parties cannot agree, either may request an audit to be performed by the CSEA to determine the amount of arrearages owed by Husband, for both child support and spousal support."

{¶ 39} We note that R.C. 3119.27(A) mandates the imposition of a processing fee. It has long been recognized that an administrative agency is entitled to compensation for assuming the risks associated with the handling and disbursement of funds in proportion to the amount of those funds and that a two percent fee is reasonable. *Curran v. Kelly*, 9th Dist. Medina No. 10CA0139-M, 2012-Ohio-218, ¶ 13.

{¶ 40} In this case, Husband made direct payments to Wife for temporary support owed during the pendency of the case. The trial court's final order directed the parties to conduct an audit of both child support and spousal support. As conceded by Wife, "[i]t is likely that if funds are owed by Husband he will satisfy that amount and CSEA collection will not be necessary. In the event the parties are unable to agree, and the CSEA has to collect funds from Husband, then a processing fee would be appropriate."

{¶ 41} Following review, we agree it would be inappropriate to charge a fee for money that was not administered by the agency and had already been paid to Wife. However, Wife explains that the audit has not been completed and therefore it is not known whether CSEA will have any involvement in the processing of the temporary support obligations Husband owed Wife. Since that issue is to be determined, it is prematurely raised. Following the audit, if Husband has satisfied the amount due under the temporary order without CSEA involvement, then he will not owe the processing fee. However, if CSEA is needed to collect the funds, then Husband will owe the processing fee. Therefore, we overrule Husband's third assignment of error.

{¶ 42} Assignment of Error No. 4:

{¶ 43} THE TRIAL COURT ERRED IN FAILING TO GRANT DARREN ADDITIONAL PARENTING TIME DURING THE SUMMER MONTHS.

{¶ 44} In his fourth assignment of error, Husband alleges the trial court erred in its

decision allocating parenting time. Specifically, Husband argues the trial court should have allocated five weeks of summer parenting time instead of the two weeks ordered. We find no merit to Husband's argument.

{¶ 45} A domestic relations court is vested with broad discretion in determining the visitation rights of a nonresidential parent, and its decision will not be reversed absent an abuse of discretion. *Warman v. Warman*, 12th Dist. Butler No. CA2016-08-170, 2017-Ohio-7462, ¶ 7. In making this determination, the domestic relations court's primary concern is the best interest of the child. *Gray v. King*, 12th Dist. Clermont No. CA2013-01-006, 2013-Ohio-3085, ¶ 12.

{¶ 46} In establishing a specific parenting-time schedule, a trial court is required to consider the factors set forth in R.C. 3109.051(D). *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 16. The factors include, but are not limited to, (1) the child's interaction and interrelationship with his or her parents, (2) the geographical location and distance between the parents' respective homes, (3) the child and parents' available time, including each parent's employment schedule, (4) the age of the child, (5) the child's adjustment to his or her home, (6) the health and safety of the child, (7) the mental and physical health of all the parties, (8) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, and (9) "any other factor in the best interest of the child." R.C. 3109.051(D).

{¶ 47} The trial court found that J.G. loves her parents and her parents do a good job of encouraging a relationship between each other. Both parents acknowledged that it is best for J.G. to remain in her current school district. However, one major problem in allocating parenting time is the fact that Wife resides in Ohio with J.G., while Husband now resides in Florida. The central dispute is over the amount of time J.G. will spend with her father during

the summer.

{¶ 48} The trial court found that it was in J.G.'s best interest to award Husband two weeks of summer parenting time. In so doing, the trial court found "[w]hile there is a need for [J.G.] to know her father, there is also a need for her to be with friends and involved in her activities with school friends in Ohio, particularly now that she is entering high school. In the absence of an agreement, the Court will require a 14-day stretch that begins on a Friday and ends on a Friday, covering the last week of June and the first week of July."

{¶ 49} Following review, we find the trial court did not abuse its discretion in its order regarding parenting time. We agree with the trial court that the difference in geographical location requires substantial travel that interferes with activities and bonds that are valuable to J.G. and are in her best interests. J.G. is doing very well academically and socially in Ohio and looks forward to building deeper relationships with her friends and pursuing extracurricular activities as she begins high school. We further note that, J.G., who was 14 years old at the time of trial, indicated to the trial court that she did not prefer to travel to Florida often or for any significant length of time. It is often difficult in fashioning visitation orders where, as here, the child is well cared for and is clearly bonded with both parents. However, we agree with the trial court that five weeks in Florida away from her life in Ohio would not be in her best interests. In this case, the trial court clearly engaged in a balancing of the factors set forth in R.C. 3109.051(D) in coming to its final visitation order. In reviewing that order, we do not find it to constitute an abuse of discretion. As a result, we overrule Husband's fourth assignment of error.

{¶ 50} Cross-assignment of Error No. 1:

{¶ 51} THE TRIAL COURT ERRED WHEN IT FOUND HUSBAND ESTABLISHED A SEPARATE PROPERTY INTEREST IN HIS RETIREMENT ACCOUNT.

- 15 -

{¶ 52} In her first cross-assignment of error, Wife argues the trial court erred by finding that Husband had a separate property interest in certain retirement accounts. Wife's argument is without merit.

{¶ 53} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11. Initially, pursuant to R.C. 3105.171(B), "the court shall * * * determine what constitutes marital property and what constitutes separate property." An appellate court reviews the trial court's classification of property or debt as marital or separate under the manifest-weight-of-the-evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8;

{¶ 54} After classifying the property as separate or marital, "the court shall disburse a spouse's separate property to that spouse" and divide the marital property equally. R.C. 3105.171(C)(1) and (D). However, if the court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. R.C. 3105.171(C)(1); *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 34. The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54.

{¶ 55} As the dispute in this assignment of error relates to the determination of whether Husband had a separate property interest in two of his retirement accounts, we review the trial court's decision under the manifest weight standard.

{¶ 56} In this case, Husband had a 401(k) Savings Plan through his former employment at Reynolds & Reynolds. Husband provided documentation that, as of March 31, 2000, the balance of that Plan was $58,532.81. The parties were married on May 18,

2000. As of September 30, 2000, the balance of the Plan was $57,231.37. Husband testified that the decrease in value was a result of market fluctuations.

{¶ 57} Husband also had a 401(k) Plan through his other former employment at Access Systems. Husband began his employment prior to the marriage on August 16, 1999. As of July 1, 2000, approximately two months after the marriage, the balance of the Plan was $5,200.63. As of March 31, 2001, the balance in the 401(k) Plan was $10,224.95. On July 4, 2001 Husband began working for Anthem.

{¶ 58} After Husband left Access Systems, he maintained the 401(k) funds at Merrill Lynch in two separate accounts, one relating to his employment with Reynolds & Reynolds and one relating to his employment with Access Systems. On May 16, 2006, Husband transferred the funds to an Ameriprise account. At the time of this transfer, the balance in the account was $70,624.83. Husband testified that he did not make any contributions to or withdrawals from these accounts. During trial, Husband testified that the current value of the Ameriprise account was $112,000.

{¶ 59} On appeal, Wife argues that Husband failed to provide documentation referencing an accurate account balance on the date of marriage and also that he placed marital assets in the accounts. Wife also alleges that the trial court relied on inadmissible hearsay and objected to Husband's testimony regarding the value of the account.

{¶ 60} Following review, we find the trial court's decision is supported by the manifest weight of the evidence. As noted above, Husband introduced evidence as to his premarital contributions to the relevant 401(k) and his testimony with regard to the value of the accounts was permissible. There was some question as to whether marital property was comingled with Husband's separate 401(k) plans following his separation from Anthem and Wife's attorney inquired about past settlement negotiations in this matter. However, much of the

confusion surrounding those issues was not substantially developed in the record, nor effectively addressed on cross-examination. Furthermore, Wife's remaining arguments with respect to the trial court hearing inadmissible hearsay are speculative and unpersuasive in light of the evidence and testimony presented by Husband. As a result, we find the trial court did not err in finding that Husband had a separate interest in the 401(k) accounts that he contributed to prior to the marriage. Wife's first cross-assignment of error is overruled.

{¶ 61} Cross-assignment of Error No. 2:

{¶ 62} THE TRIAL COURT ERRED WHEN IT FAILED TO INCLUDE NECESSARY LANGUAGE IN THE SPOUSAL SUPPORT AWARD.

{¶ 63} In her second cross-assignment of error, Wife claims the trial court erred by failing to include necessary language in the spousal support award. Specifically, Wife argues the trial court should have included language that "[i]t is the intent of the Court that Wife receive 34% of all sources of Husband's income, however that is named, identified, or described by Husband's employer." Wife alleges the language is necessary to protect her in the event that Husband's employer "creatively calls his income something not currently identified * * * or if his stock vesting date is creatively postponed until" after the five-year spousal support term ends. However, we do not believe that language to be necessary in the award of spousal support. In the event that Wife's concerns are realized and there is a change in Husband's income structure, her recourse would be to file a motion to modify support obligation. *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 15. As a result, Wife's second cross-assignment of error is overruled.

{¶ 64} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.