[Cite as *Schalk v. Schalk*, 2023-Ohio-4584.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| JENNIFER SCHALK, | : | |
| Appellant, | : | CASE NO. CA2023-01-001 |
| | : | O P I N I O N |
| - vs - | | 12/18/2023 |
| | : | |
| CHRISTOPHER SCHALK, | : | |
| Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2021 DRA 00196

Andrew G. Ice, for appellant.

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellee.

**HENDRICKSON, P.J.**

{¶ 1}  Jennifer Schalk ("Wife") appeals the final judgment entry of divorce from Christopher Schalk ("Husband") by the Clermont County Court of Common Pleas, Domestic Relations Division.  She raises two assignments of error regarding the valuation of the marital home and restriction of her parenting time with her children.

**Factual Background**

{¶ 2}  Wife and Husband were married on June 19, 2009 and had two daughters

born during their twelve-year marriage. The family lived together in Clermont County near Milford, Ohio.

{¶ 3}  In February of 2021, Wife filed for divorce. In March of 2022, Wife moved approximately 2,300 miles away to Bothell, Washington, located just outside of Seattle, and she lives there with her boyfriend and his two children. Mother was adamant that she did not move from Milford to Washington to be with her boyfriend and stated she was determined to leave Milford and move somewhere else. Husband remained at the marital home. While the parents initially enjoyed a shared parenting arrangement where the parties equally split parenting time, Wife's parenting time was drastically reduced after she moved to the state of Washington.

{¶ 4}  The children were approximately ten and seven years old at the time of the divorce. Both children were very bonded to the Milford community through neighborhood friendships, various sport teammates, and school classmates. At the time of these proceedings, the oldest daughter was in sixth grade and maintained good grades. The youngest daughter was in third grade and had some academic struggles as well as ADHD. However, she had many friends and was described as a "social butterfly."

### Procedural Posture

{¶ 5}  A final contested divorce was heard on June 21, 2022. During the trial, two points of contention arose that are the focus of this appeal. The first was the valuation of the marital home. Wife and Husband each retained a residential appraiser to testify regarding the value of the home. Both appraisers were experienced in the field of real estate appraisal, and the parties stipulated to their qualifications to testify as expert witnesses. In determining the value of the marital home, the appraisers used various sources of information, but each appraisal considered the same three comparable home sales in the area.

{¶ 6} Wife's appraiser valued the house at $510,000 and applied an upward adjustment to the value of the home based on the larger size of the lot. Wife's appraiser also made another upward adjustment of $40,000 due to the property having an in-ground swimming pool and fencing around the property.

{¶ 7} Husband's appraiser, on the other hand, valued the property at only $464,000 and applied no adjustment for the lot's size. Instead, Husband's appraiser applied a single downward adjustment on the property due to its proximity to Interstate 275 and high-tension power lines located near the home. Wife's appraiser made no adjustments for the home's distance from the highway or power lines.

{¶ 8} In its decision, the trial court accepted the opinion of Husband's appraiser and valued the property at $464,000.

{¶ 9} Custody and parenting time with the children was the second point of contention during the trial. Importantly, Wife does not contest the designation of Husband as the sole residential parent and legal custodian of the children. Wife only appeals the issue of whether the parenting time granted to her was reasonable and just.

{¶ 10} The children were represented by a guardian ad litem ("GAL"). From August of 2021 through May of 2022, the children's GAL prepared three reports for the trial court's consideration. In the first two reports, the GAL recommended equal parenting time between Wife and Husband assuming Wife stayed in the Cincinnati area but that Husband receive custody if Wife did not remain in the area. In the GAL's final report, after Wife moved to Washington, the GAL recommended Husband receive custody of the children and did not recommend shared parenting due to the geographical distance involved.

{¶ 11} In its decision, the trial court designated Husband as the sole residential parent and legal custodian of the children. In addition, the court adopted the Husband's proposed parenting schedule. In doing so, the trial court observed this was in the best

interest of the children because the children had been raised in Ohio, had friends and support networks at school, engaged in regular extracurricular activities, and were bonded with Husband's extended family members who lived locally.

{¶ 12} The court also found that while Wife was undoubtedly bonded with the children, her move to Washington had caused her to become "disengaged" in the day-to-day lives of her children. The court viewed regular travel to Washington by plane impractical both financially and logistically and believed it would threaten the children's school performance and ability to continue participating in extracurricular activities. The trial court believed that Wife refused to acknowledge or minimized the importance of this.

{¶ 13} **First Assignment of Error**

**THE TRIAL COURT ERRED AND ACTED CONTRARY TO LAW WHEN IT DETERMINED THE VALUE OF THE MARITAL RESIDENCE TO BE $464,000.00.**

{¶ 14} Trial courts wield broad discretion when valuing marital property. *Webber v. Webber*, 12th Dist. Preble No. CA2003-03-006, 2004-Ohio-3172, ¶ 19, citing *Donovan v. Donovan*, 110 Ohio App.3d 615 (12th Dist.1996). When determining the value of marital property, trial courts are not bound to any particular method. *Id*. However, the trial court's valuation must be supported by competent and credible evidence. *Moore v. Moore*, 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 45, citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 574 (8th Dist.1993); *see also Flynn v. Flynn*, 196 Ohio App.3d 93, 2011-Ohio-4714, ¶ 10 (12th Dist.). In essence, "[r]igid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992). Only where the trial court's decision is "unreasonable, arbitrary, or unconscionable" will it be disturbed. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} On appeal, Wife argues there are three issues with the trial court's adoption

of the appraisal of Husband's expert regarding the value of the marital home: (1) the appraisal failed to make an upward adjustment due to the property's size; (2) the appraisal failed to break down the downward adjustment for the property between the property's proximity to Interstate 275 and power lines; and (3) the appraiser's downward adjustment was not supported by competent and credible evidence.

{¶ 16} The testimony of Husband's expert addressed each of these concerns. As to the first issue, Husband's expert did not make an upward adjustment due to the property's size because of its proximity to the highway as well as power lines and a power line tower. The back end of the lot is approximately 1,000 feet from Interstate 275, and the home is 50 feet from a power line tower. This view, in the opinion of Husband's expert, detracted from the value of the home.

{¶ 17} As to the second issue, Husband's appraiser testified the downward adjustment was based primarily on the power lines because adjusting a property's value due to its proximity to a highway is difficult to calculate due to a variety of variables such as whether the highway could be seen or heard from the property. As a result, Husband's expert grouped the two factors together.

{¶ 18} Finally, Husband's expert testified that he used his experience as a residential appraiser, articles he had read regarding the relationship between property values and power lines, and the opinions of real estate agents who sold the comparable homes when calculating the downward adjustment. Husband's appraiser admitted that there were no comparable sales in the twelve months prior to his appraisal that sat alongside power lines. As a result, no comparable sales data was used to calculate this adjustment.

{¶ 19} While Husband's expert may not have used the methods or sources of information that Wife's expert used or came to the conclusions Wife advocated for, his opinion was supported by the competent and credible sources of information described

above. As a result, the trial court's adoption of Husband's appraisal was not unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion in valuing the marital home.

{¶ 20} **Second Assignment of Error**

**THE TRIAL COURT ERRED IN FAILING TO GRANT WIFE JUST AND REASONABLE PARENTING TIME WITH THE MINOR CHILD [sic] PURSUANT TO O.R.C. SECTION 3109.051(A).**

{¶ 21} In divorce proceedings, if the trial court does not issue a shared parenting decree, the trial court is tasked with issuing a "just and reasonable order or decree" that gives the non-residential parent parenting time with his or her children. R.C. 3109.051(A). The statute lists various factors for courts to consider when determining a parent's parenting time. Some are particularly relevant in this case: (1) how the children interact with each parent; (2) the geographic location of each parent; (3) both the parents' and children's schedule; (4) age of the children; (5) the children's adjustments to their home, school, and the community; (6) whether a parent has established residence outside of Ohio; and (7) any other factor in the best interest of the child. R.C. 3109.051(D).

{¶ 22} Ultimately, the court's mandate in these proceedings is to determine what is in the best interest of the children. *Ghanayem v. Ghanayem*, 12th Dist. Warren No. CA2018-12-138, 2020-Ohio-423, ¶ 45. Similar to the trial court's determinations regarding the value of marital property, a domestic relation court's decision regarding parenting time will not be reversed absent an abuse of discretion. *Id.*

{¶ 23} On appeal, Wife argues that the trial court's order adopting Husband's parenting schedule is not just and reasonable because that schedule does not provide enough parenting time for her. Specifically, Wife believes the trial court did not give enough consideration to the fact that she was an involved parent before the divorce and effectively

communicated with Husband and the children about the children's best interests during the divorce. In addition, Wife argues that her move to Washington did not change her ability or desire to maintain an active role in her children's lives.

{¶ 24} Husband's proposed parenting schedule gave the parents alternating spring breaks with the children, split summers (with Wife getting six weeks and Husband three weeks), alternating Thanksgivings, split winter breaks (with each parent getting one week), Wife getting Mother's Day in Ohio, and additional time for Wife in Ohio with proper notice. Wife's proposed schedule, for just the 2022-2023 school year, had the children in Washington for the summer, and trips to Washington in September (or Wife could come to Ohio), October, November, December, February, and March. These trips revolved around extended weekends or holiday breaks. The GAL testified that Husband's proposed parenting schedule was consistent with her recommendations.

{¶ 25} Considering the factors of R.C. 3109.051 and the wellbeing of the children, we find that the trial court's adoption of Husband's proposed schedule was just and reasonable and not an abuse of discretion.

{¶ 26} At the onset, we recognize that Wife, Husband, and the children all interact well with each other despite the difficulties that divorce inevitably brings. In addition, everyone agrees that Wife loves her children, is bonded with them, and was very much involved in their day-to-day lives before the divorce and Wife's move to Washington. The children expressed a desire to their GAL to spend equal time with both parents after the divorce.

{¶ 27} Wife believed that since her move, she was able to maintain her relationship with her children through technologies like phones, smart speakers, and video chat services. In addition, Husband testified that both before and after Wife's move, he and Wife generally agreed on and could effectively communicate about what they believed was in

the best interest of the children. As a result, Wife thought that despite living in Washington she could effectively exercise more significant parenting time than was ordered by the trial court.

{¶ 28} Yet, Wife's move created inevitable complications. Wife recognized that being in Washington meant she would not be readily available to assist with or be present for the day-to-day activities of her children in Ohio. Indeed, Husband stressed that since her move, he had been all but solely responsible for taking care of the children's day-to-day needs. Further, the great distance between Wife's residence in Washington and Milford, Ohio necessitates plane travel to facilitate parenting time. Wife's proposed parenting schedule consisted of up to seven round-trip flights for the children per year.

{¶ 29} Wife testified at trial that she did not believe that number of flights would be unduly burdensome on the children, and she noted there were no issues when the children had previously flown to see her. When asked at trial how she would pay for the flights, Wife reasoned she could budget appropriately if she had a court ordered schedule to plan around. Husband and the GAL expressed concern that regular trips to Washington would be demanding on the minor children.

{¶ 30} The trial record clearly reflects the fact that the children are adjusted to life in Ohio. Wife acknowledged the children lived their entire lives in Milford. As a result, the children's school, medical providers, friends, and some extended family on Husband's side, were all located there. In addition, the children participated in extracurricular activities, particularly soccer. Citing these factors, both Husband and the GAL believed the children's best interests were served by residing in Ohio and remaining fully engaged in their local activities. Nonetheless, Wife believed she could acclimate her children to her new life and provide adequate support networks for her children in Washington. In Wife's view, her parenting time should take precedence, even if that meant missing some school, soccer

practices, and other extracurricular activities.

{¶ 31} Upon review, it is clear that Wife's choice to establish residence across the country in Washington limited her ability to provide for her children's best interests. While much of Wife's testimony focused on how she believed she could acclimate her children to her new life, it does not demonstrate why it would be in the best interest of the children to spend regular, extended time across the country outside of the obvious need to spend time with their mother. This becomes particularly evident when the residence, community, school, extracurricular activities, and other social networks that the children grew up with and are adjusted to remain readily available to them in Ohio.

{¶ 32} Additionally, Wife's proposed "wait and see" approach to regular travel, both in terms of the children's ability to handle it and her ability to finance it, does not put the wellbeing and interest of the children first. We find that it is not unreasonable to think, as Husband, the GAL, and the trial court did, that it would be difficult for the children, who were ten and seven years old at the time of these proceedings, to travel regularly and deal with the accompanying jetlag and time zone changes. We also note that the trial court gave Wife the opportunity to have additional time with the children, provided she were the one to travel and visit them in Ohio.

{¶ 33} Ultimately, it is hard for the factors of R.C. 3109.051 to weigh any more heavily against Wife and her desire for additional parenting time. Despite the loving relationship between Wife and the children, Wife willingly chose to move across the country after filing for divorce. Wife made clear that nothing, not even the prospect of losing time with her children, would have changed that decision.

{¶ 34} The realities of this self-induced move to Washington are inescapable. Contrary to Wife's belief, her move undoubtedly, and self-evidently, jeopardized her ability to continue being so involved in the lives of her children without creating more interruptions

than the divorce proceedings already had. The importance of the consistency that remaining within the community the children grew up provides to the children cannot be understated. The trial court effectively balanced the need of the children to maintain a relationship with their parents with the realities of the divorce and Wife's move to Washington.

{¶ 35} For the foregoing reasons, we overrule the two assignments of error raised by Wife.

{¶ 36} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.