[Cite as *Motes v. Motes*, 2026-Ohio-307.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MATTHEW NEAL MOTES, | : | |
| Appellant, | : | CASE NO. CA2025-05-047 |
| vs. | : | OPINION AND JUDGMENT ENTRY |
| | | 2/2/2026 |
| MELISSA SUE MOTES, | : | |
| Appellee. | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR14030274

Matthew Neal Motes, pro se.

Ched H. Peck, for appellee.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Matthew Motes ("Father"), appeals a decision of the Butler County Common Pleas Court, Domestic Relations Division, regarding parenting time

matters involving his son. Upon review, we conclude that the modification of parenting time is generally a matter entrusted to the discretion of the trier of fact. However, we find that remand is warranted in this instance for the limited purpose of addressing Mother's overnight work schedule and its impact on the parenting time arrangement.

**I. Facts and Procedural History**

*Summary of Events*

{¶ 2}    Father and Melissa Motes ("Mother") married in 2010 and are the parents of one child, M.M., born in March 2011. The parties divorced in 2015, at which time Mother was designated as M.M's residential and custodial parent.

{¶ 3}    Since the divorce, the parties have been involved in extensive post-decree litigation, resulting in modifications of the original decree. Father has served as M.M.'s legal custodian and residential parent since January 28, 2020. He has moved for contempt based on Mother's failure to facilitate parenting time. Father has also raised concerns regarding Mother's erratic behavior and suspected drug abuse.

{¶ 4}    In August 2022, the trial court ordered Mother to complete a psychological evaluation within six months. Although Mother claimed she complied with the order, she did not. Consequently, in February 2023, the trial court suspended Mother's parenting time. Despite the suspension, Father continued to allow M.M. to visit Mother. During this period, however, Mother engaged in repeated outbursts and sent numerous inappropriate text messages to M.M. The messages were often sent late at night or during school hours and included statements such as:

> Your dad wants you out of my life and the court is helping him.
>
> Why am I paying all this money whenever you could just choose to come over. . . Call me. . . He is playing you
>
> It worries me how much they are playing with your head. I want to protect you but I don't know how.

- 2 -

Please say a prayer that Jesus helps us in court on Tuesday.

That's it. I'm not freaking calling or texting anymore. . . your being like your dad.

You're a freaking brat. . . I'm so disappointed in you.

It's real nice your over there playing house with everybody else and being everyone else's son but mine.

{¶ 5} The record reflects that on December 14, 2023, Mother completed the court-ordered psychological evaluation with Dr. Jeffrey Baker, who concluded that she did not suffer from any mental disorder. On April 9, 2024, Mother filed a motion to reinstate her parenting time.[1] The matter proceeded to a hearing held over two days.

*Evidentiary Hearing*

{¶ 6} Dr. Baker is a clinical and forensic psychologist. He testified that his evaluation included a review of the case file and relevant court orders, a clinical interview with Mother, administration of the Minnesota Multiphasic Personality Inventory-3 ("MMPI-3"), the Adverse Childhood Experiences Questionnaire, as well as interviews with collateral sources. Based on this evaluation, Dr. Baker determined that Mother does not suffer from any mental health disorder. Mother's MMPI-3 produced a valid profile and revealed no indicators of substance abuse or schizophrenia.

{¶ 7} Dr. Baker further testified that, if he were to make recommendations, he would suggest that Mother work with a clinician who follows Dr. John Gottman's methodology to improve relationship management and conflict resolution.[2]

{¶ 8} Mother testified that she received Dr. Baker's recommendations and was

---

1. We note that although this matter originated with Mother's motion to reinstate parenting time, the trial court's final order included a modification of the parenting schedule.

2. Dr. Baker stated that Dr. John Gottman is a recognized expert from the University of Washington who specializes in relationships and conflict management.

willing to comply with any court order necessary to resume parenting time with M.M. She stated that she would submit court-ordered drug screens and acknowledged that her failure to timely complete the psychological evaluation was her own error. When asked what parenting schedule would be in M.M.'s best interest, Mother proposed having parenting time from Thursday after school until Saturday morning, consistent with her work schedule of Sunday through Wednesday from 7:00 p.m. to 7:00 a.m.

{¶ 9}  On cross-examination, Mother was confronted with the text messages she had sent to M.M. She testified that she now recognizes the messages were inappropriate but explained that being separated from her child caused her to feel as though the "world was against her." She stated that she believed the only way to alleviate those feelings was to regain parenting time.

{¶ 10} Samantha Motes ("Stepmother") testified that she has been married to Father for five years, has known M.M. since he was six years old, and assists in his care, including transportation to school. She testified that M.M.'s behavior has improved with reduced time with Mother, noting he is calmer, emotionally stable, and performing well in school.

{¶ 11} Father testified that he has a strong relationship with M.M. He stated that prior parenting time orders were difficult to manage because Mother routinely disregarded the schedule. Father also testified that M.M. misses too much school and extracurricular activities while in Mother's care.

{¶ 12} Father expressed concerns with Dr. Baker's evaluation, testifying that Dr. Baker did not contact him and relied on inaccurate information from Mother's family. Father stated that his concerns regarding Mother's behavior were not reflected in the evaluation and that the underlying issues remained unaddressed. Father testified that the parties have been engaged in litigation for approximately seven years, that Mother

continues the same pattern of behavior and noncompliance with court orders, and that she does not appear to be making efforts to improve the situation for M.M. Finally, Father testified that it is in M.M.'s best interest to maintain the existing parenting arrangement—one overnight every two weeks—which has been in place for approximately one and one-half years, explaining that flexibility is necessary due to M.M.'s sports schedule and that forced visitation negatively impacts M.M.

*Trial Court's Decision*

{¶ 13} The magistrate took the matter under advisement and issued a written decision ("Magistrate's Decision") which granted Mother parenting time every other weekend from Friday at 5:00 p.m. until Saturday at 8:00 p.m. (with variations during summers and holidays) and required Mother to ensure M.M. still was taken to any of his extracurricular activities. But the Magistrate's Decision prohibited Mother from approaching, speaking to, or sitting near Father or his family, or from addressing parenting issues with Father during any of M.M.'s extracurricular activities. The Magistrate's Decision took Mother's third shift work into account, providing for changes if she stopped working third shift. But the Magistrate's Decision also placed additional burdens and guardrails on Mother.

{¶ 14} The Magistrate's Decision ordered Mother to submit to drug testing and provided for additional parenting time upon verification that Mother was engaged in a service provider consistent with Dr. Baker's recommendations. Absent an emergency, Mother could only initiate a call to M.M. once per day, and she was prohibited from initiating any communications with M.M. during school hours or between 9:30 p.m. and 7:00 a.m.[3] Any communications between Mother and M.M. that fit within those orders

---

3. The Magistrate's Decision specified it did not limit the number of times per day M.M. could contact Mother.

could continue as long as M.M. responded to her. But if he did not respond to a communication from Mother, she must cease communication with him. The magistrate ordered that Mother "shall not berate, interrogate, or guilt" M.M. during any communications, nor shall she "discuss Father, court, or any adult issues" with him. Finally, the Magistrate's Decision detailed several consequences that would occur if Mother violated conditions contained in it and gave some monitoring control to Father.

{¶ 15} First, if Mother made any unilateral changes to the parents' written agreement or withheld Father's parenting time, her parenting time would be suspended. Second, if Mother missed any of the required drug testing, she would be responsible for submitting to, and paying for, makeup screenings. Finally, the Magistrate's Decision required Father to review Mother's correspondence with M.M. on a weekly basis. If he found that Mother had violated any of the magistrate's conditions regarding communications, Father had to block Mother's number from M.M.'s phone. In addition, if Mother violated one of the communication restrictions, she would not be permitted to have any ongoing contact with M.M. outside of her scheduled parenting time. Mother filed objections to the Magistrate's Decision and Father responded.

{¶ 16} The trial court adopted the Magistrate's Decision in part but modified the order in several respects, including removing the drug-testing requirement and eliminating the condition that Mother participate in counseling before receiving additional parenting time. In addition, the trial court applied some of the restrictions that had only applied to Mother in the Magistrate's Decision to both parents, such as limiting "media contact" with M.M. to no more than once per day, restricting hours (absent emergency) for initiating communications with M.M., and communications or contact during M.M.'s extracurricular activities. The trial court prohibited either parent from blocking the other parent's phone number from M.M.'s phone. Neither parent could unilaterally suspend the other's

parenting time.

{¶ 17} Instead of adopting the Magistrate's Decision regarding parenting time, the trial court granted Mother "liberal parenting time" and established a default parenting schedule in the event the parties could not agree. The trial court adopted the parenting schedule as outlined in the table below.

### During the school year

|  | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Week One | Father | Father _____ Mother at 5:00 p.m. | Mother | Mother to school _____ Father at 5:00 p.m. | Father _____ Mother at 5:00 p.m. | Mother | Mother _____ Father at 5:00 p.m. |
| Week Two | Father | Father | Father _____ Mother at 5:00 p.m. | Mother | Mother to school _____ Father at 5:00 p.m. | Father | Father |

### During the summer

|  | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Week One | Father _____ Mother at 5:00 p.m. | Mother | Mother _____ Father at 5:00 p.m. | Father | Father _____ Mother at 5:00 p.m. | Mother | Mother |
| Week Two | Mother _____ Father at 5:00 p.m. | Father | Father _____ Mother at 5:00 p.m. | Mother | Mother _____ Father at 5:00 p.m. | Father | Father |

{¶ 18} Father now appeals, raising four assignments of error for review.

## II. Trial Court's Independent Review

{¶ 19} In his first assignment of error, Father argues that the trial court failed to conduct a de novo review of the Magistrate's Decision. He contends the court did not meaningfully analyze the evidence or prior rulings, misconstrued the factual record, and issued a decision unsupported by the evidence and contrary to M.M.'s best interest.

{¶ 20} Civ.R. 53(D)(4)(d) provides:

> If one or more objections to a magistrate's decision are timely filed, *the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters* to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

(Emphasis added.)

{¶ 21} Therefore, Civ.R. 53(D)(4)(d) imposes a mandatory duty on the trial court to address and dispose of a party's timely objections. *Lynch v. Lynch*, 2007-Ohio-7083, ¶ 8 (12th Dist.). A trial court is not permitted to "merely rubber-stamp" a magistrate's decision. *Pietrantano v. Pietrantano*, 2013-Ohio-4330, ¶ 13 (12th Dist.). Failure to rule on objections and conduct an independent review constitutes an abuse of discretion. *Id*.

{¶ 22} "Ordinarily, a reviewing court will presume that the trial court performed an independent review of the magistrate's decision." *Ohio Bar Liab. Ins. Co. v. CCF Dev., L.L.C.*, 2018-Ohio-3988, ¶ 23 (12th Dist.), citing *Kairn v. Clark*, 2014-Ohio-1890, ¶ 11 (12th Dist.). Therefore, "the party asserting error bears the burden of affirmatively demonstrating the trial court's failure to perform its duty of independent analysis." *Pietrantano* at ¶ 14.

{¶ 23} Here, Father has not satisfied this burden. The trial court expressly stated in its decision that it conducted an independent review of all factual and legal issues addressed by the magistrate in ruling on Mother's objections. The fact that the trial court did not cite any specific portion of the transcript or exhibits does not demonstrate that it failed to conduct the required review. *Cottrell v. Cottrell*, 2013-Ohio-2397, ¶ 94 (12th Dist.). "'While citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so.'" *Id.*, quoting *Hampton v. Hampton*, 2008-Ohio-868, ¶ 17 (12th Dist.).

{¶ 24} Absent evidence to the contrary, courts presume the trial court complied with its obligation under Civ.R. 53. *Ohio Bar Liab. Ins. Co.* at ¶ 23; *Mahlerwein v. Mahlerwein*, 2005-Ohio-1835, ¶ 47 (4th Dist.). Moreover, in this case, the trial court explicitly stated that it performed an independent review of the "record." While the trial court also specified it reviewed the "[Magistrate's Decision]; findings of fact and conclusions of law; trial transcript; argument of counsel; statutes and case law and best interest factors[,]" it did not state it limited its review of the record to just those items. In addition, the trial court noted it was "very familiar with the ongoing and seemingly unending parenting litigation between the parties."

{¶ 25} To be sure, Father disagrees with the conclusions the trial court made following its review of the record and consideration of the Magistrate's Decision and Mother's objections thereto. But Father's assertion that the trial court "disregarded key evidence" and "limit[ed] its review to a recent transcript" is unsupported by the trial court's own statements in the decision. Our review of the record finds no reason to find the trial court disregarded the "totality of the circumstances" or failed to conduct a "full and proper de novo review" of the magistrate's findings of fact and conclusions of law. Although the trial court did not specifically discuss each applicable factor in detail, the record supports

that it independently reviewed the Magistrate's Decision and entered judgment accordingly. We therefore find no merit to Father's arguments and overrule his first assignment of error.

### III. Parenting Time

{¶ 26} In his second assignment of error, Father argues that the trial court improperly modified the parties' parenting time without applying the 16 factors set forth in R.C. 3109.051(D). He further contends that a change in circumstances was required before any modification could be made and that the parenting time order is not in M.M.'s best interest. Father raises similar arguments in his third assignment of error, adding that the trial court abused its discretion by failing to consider Mother's unavailability during the week due to her overnight work schedule. With the exception of the issue concerning Mother's work schedule, we find Father's arguments unpersuasive.

{¶ 27} A trial court possesses broad discretion in matters concerning the visitation rights of a nonresidential parent. *Ghanayem v. Ghanayem*, 2020-Ohio-423, ¶ 45 (12th Dist.). Accordingly, a reviewing court will not reverse such a decision absent an abuse of discretion. *Id*. This deference is grounded in the principle that the trial court is best positioned to fashion an equitable outcome based on the particular facts and circumstances of each case. *Booth v. Booth*, 44 Ohio St. 3d 142, 144 (1989).

{¶ 28} Although a change in circumstances is required to modify a custody determination, that requirement does not apply to modifications of visitation or parenting time. *Shafor v. Shafor*, 2009-Ohio-191, ¶ 8 (12th Dist.).[4] Rather, R.C. 3109.051 governs

---

4. Father cites to *Gaskin v. Gaskin*, 2017-Ohio-8195, for the requirement that "parenting time modifications require strict compliance with R.C. 3109.04." This court could find no such case or such a legal holding from any case. A case with that citation reference exists from one of our sister districts, but the case pertains to a postconviction relief in a criminal matter, not to any parenting time dispute. *See State v. Withrow*, 2017-Ohio-8195 (2nd Dist.). We caution Father to ensure that any cited cases actually exist and stand for the legal principle asserted.

parenting time and visitation, and a trial court modifying parenting time must consider the factors enumerated in R.C. 3109.051(D). *Id*. The factors include, but are not limited to, (1) the child's interaction and interrelationship with his or her parents, (2) the geographical location and distance between the parents' respective homes, (3) the child and parents' available time, including each parent's employment schedule, (4) the age of the child, (5) the child's adjustment to his or her home, (6) the health and safety of the child, (7) the mental and physical health of all the parties, (8) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, and (9) "any other factor in the best interest of the child." R.C. 3109.051(D).

{¶ 29} While it is preferable for a trial court to expressly reference the statute, it is not required to do so, provided the record reflects that the court considered the statutory factors. *Carr v. Carr*, 2016-Ohio-6986, ¶ 24 (12th Dist.); *Smarrella v. Smarrella*, 2015-Ohio-837, ¶ 53 (7th Dist.) (trial court is only required to determine what is in the best interest of the child and to consider all relevant factors).

*Parenting Time*

{¶ 30} Upon review, we find that the trial court did not abuse its discretion in modifying the parenting time order. Contrary to Father's position, Mother was not required to show a change in circumstances. The court was only required to consider the statutory factors in R.C. 3109.051(D), with the child's best interest as the guiding principle.

{¶ 31} Here, the trial court expressly stated that it considered, weighed, and balanced the relevant statutory factors in light of the unique facts and circumstances of the case. The court also referenced the local rules governing parenting time and their general guidelines. Specifically, the court noted that M.M. was 13 years old at the time of the final order, participating in multiple competitive sports, and approaching an age marked by increasing independence, including driving, possible employment, and greater

peer interaction. For these reasons, the court looked to the guidelines applicable to older teenagers, which emphasize flexibility and prioritize accommodating a child's school, social needs, extracurricular activities, and work commitments.

{¶ 32} Although Father argues that the evidence does not support the court's determination, the trial court expressly relied on the extensive record, its long-standing familiarity with the case, and its review of the Magistrate's Decision. As the trier of fact, the trial court was in the best position to weigh the evidence and competing considerations.

*Mother's Work Schedule*

{¶ 33} However, while we find the trial court did not abuse its discretion regarding most of Father's assertions, we find merit to Father's argument regarding the court's treatment of Mother's work schedule.

{¶ 34} Mother testified that she is employed by Maxim Staffing as a licensed practical nurse and works an overnight schedule from 7:00 p.m. to 7:00 a.m. on Sundays, Mondays, Tuesday, and Wednesdays. She also testified that she intends to maintain this schedule. The Magistrate's Decision accounted for this testimony when allocating parenting time. The trial court, however, modified the Magistrate's Decision and imposed a significantly different schedule.

{¶ 35} Under the trial court's order, parenting time during both the school year and the summer is set by a detailed rotating schedule. However, the schedule fails to adequately account for Mother's overnight work hours. While the court's goal of creating an equitable arrangement is evident, the resulting schedule could not have reasonably considered Mother's availability and therefore constitutes an abuse of discretion.

{¶ 36} Specifically, the order grants substantial parenting time to Mother during periods when she is working or would reasonably need to sleep after an overnight shift.

This is inconsistent with R.C. 3109.051(D)(3), which requires consideration of both the parents' and child's available time, including each parent's work schedule. The order is especially problematic because it applies by default when the parties fail to reach an agreement—an outcome that appears likely given their contentious litigation history.

{¶ 37} Accordingly, we remand the matter for further consideration of the undisputed evidence regarding Mother's work schedule and its impact on parenting time. Considering the foregoing, we overrule Father's second assignment of error. Father's third assignment of error, to the extent it relates to Mother's work schedule, is sustained.

### IV. DR 610.1 Guidelines

{¶ 38} In his fourth assignment of error, Father argues that the trial court erred by referencing the DR 610.1 parenting time guidelines to teenagers aged 16 to 18 when M.M. was only 13. This argument lacks merit.

{¶ 39} The record reflects that the trial court did not apply the DR 610.1 guidelines for older teenagers as binding authority. Rather, the court referenced them in a contextual manner to illustrate the general principles associated with a child's increasing age, maturity, and developmental needs. The court acknowledged that as M.M. grows older, his needs and schedules will continue to evolve, necessitating greater parental flexibility.

{¶ 40} Moreover, the trial court specifically cited the "Basic Principles" section of DR 610.1. These principles are intentionally broad and are designed to help parents navigate the developmental stages of their children. They are not age-specific directives and do not impose a mandatory or age-inappropriate parenting time schedule. Instead, they offer general guidance aimed at supporting a child's overall best interest—precisely the purpose for which the trial court referenced them.

{¶ 41} Accordingly, the trial court did not err in considering these principles as part of its best-interest analysis. Father's fourth assignment of error is therefore overruled.

{¶ 42} Judgment affirmed in part, reversed in part, and remanded.


HENDRICKSON, P.J., and BYRNE, J., concur.

## J U D G M E N T   E N T R Y


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed in part, reversed in part, and remanded for further proceedings consistent with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 100% to appellant.


/s/ Robert A. Hendrickson, Presiding Judge


/s/ Matthew R. Byrne, Judge


/s/ Melena S. Siebert, Judge